Smith v. Gibson.

---

NELLIE R. SMITH, PLAINTIFF IN ERROR, v. JOHN H. GIBSON, DEFENDANT IN ERROR.

1. **Jurisdiction of Supreme Court.** Appeal is not an exclusive remedy in equity causes. In such cases the decree of the district court may be reviewed by the supreme court, either upon error or by appeal.

2. **Landlord and Tenant:** LEASE: OPTION OF PURCHASE: STATUTE OF FRAUDS. Plaintiff executed to defendant a written lease of real estate for one year, and under which defendant took possession of the leased property. The lease contained the following provision: "It is further agreed that the said John H. Gibson shall have the privilege of buying the above described property, at any time within the term of this lease, for the sum of $3,000. Then in that case the last month's rent shall be free, and the said John H. Gibson shall have the privilege of assuming the $2,000 mortgage now standing against the above described property." *It was Held,* That an oral acceptance of the option contained in the lease was sufficient under the statute of frauds, the lease being "signed by the party by whom the * * * * sale is to be made."

3. ———: ———: EVIDENCE. Upon an examination of the evidence, *It was Held*, That the finding of the district court, that the person to whom the acceptance was communicated was the agent of 'the vendor, was sustained.

4. ———: RENT: OPTION OF PURCHASE: ACCEPTANCE. By the contract of lease the rent was to be paid monthly, and was paid to the first 'day of July. On the tenth day of the same month the lessee notified the lessor, through her agent, of the acceptance of the offer to sell, when the lessor refused to make the conveyance. There having been no default at that time in the payment of rent, *It was Held*, That the acceptance was made during the term of the lease.

5. ———: TENDER: SPECIFIC PERFORMANCE. The acceptance having been made during the term of the lease, and refused, no tender of the purchase price was necessary to entitle the vendee to his action for specific performance.

6. ———: POSSESSION OF TENANT: NOTICE: SUBSEQUENT MORT-GAGE. In such case, after acceptance of the offer by the lessee, within the time provided by the written contract, his possession became that of owner, and of whose rights such possession gave notice to the subsequent mortgagee of the vendor, or lessor, and he would be charged with notice of the vendee's rights, and his mortgage be subject thereto.

ERROR to the district court for Douglas county. Tried below before WAKELEY, J.

*John P. Breen*, for plaintiff in error, cited: *Ontario Bank v. Root*, 3 Paige, 478. *Champlin v. Parrish*, 11 Paige, 408. Fry on Specific Performance, Sec. 166. *Sunderson v. Jackson*, Langdell's Select Cases on Sales, 340. *Allen v. Burk*, 2 Md. Ch. Dec., 534. *Legal v. Miller*, 2 Ves., Sen., 299. *Mainwaring v. Baxter*, 5 Ves., 458. *Lanz v. McLaughlin*, 14 Minn., 72. *Palmer v. Scott*, 1 Russell & Mylne (Eng. Chancery), 394. *Justice v. Lang*, 52 N. Y., 323. *Gartrell v. Stafford*, 12 Neb., 553. *Champion v. Joslin*, 44 N. Y., 653. Greenleaf on Evidence (13th Ed.), Sec 603, and cases cited in note 8. *Guthman v. Kearn*, 8 Neb., 507. Maxwell's Pleadings and Practice (1885), 636. *Richmond v. Gray*, 3 Allen, 25. *Storey*

*v. Krewson*, 55 Ind., 397.   *Eliason v. Henshaw*, 4 Wheaton, U. S., 225.   *Rommel v. Wingate*, 103 Mass., 327.. *Pinner v. Sharp*, 23 N. J. Eq., 274.

*J. W. Lounsbury*, for defendant in error, cited: 1 Story's Equity (11 Ed.), Sec. 736 and note.  1 Parsons on Contracts, 511.   *Otis v. Payne* (Tenn.), 8 Southwestern Rep., 848.   *Johnston v. Trippe*, 33 Federal Rep., 530.. *Gartrell v. Stafford*, 12 Neb., 545.   *Moses v. McClain.* (Ala.), 2 Southern Rep., 741.   *Hollis v. Burgess* (Kas.) 15 Pac. Rep., 536.  1 Parsons on Contracts, 46, *et seq.* Wade on Notice, Sec 382.   *Post v. Garrow*, 18 Neb., 682.. *Kellogg v. Lavender*, 9 Neb., 425.   *Welch v. Darling* (Vermont), 7 Atlantic Rep., 547.   *Johnson v. McGruder,* 15 Mo., 365.   *Ledbetter v. Walker*, 31 Ala., 176.   *Marston v. Roe*, 8 Ad. & E., 15.   *Coleman v. Garrigues*, 18 Barb., 60.

REESE, CH. J.

This was an action to compel the specific performance of a contract for the sale of real estate.   It appears from, the record that, on the 1st day of September, 1885, plaint-. iff in error, being the owner of lot eight in block eight. in Hanscom's addition to the city of Omaha, leased the same to defendant in error for the term of one year from that date, for a rental of $275, $25 of which was: payable on the 1st day of the following month, and $25, to be paid on the first day of each succeeding month, during the year.   The lease contained the following provision : "And it is further agreed that the said John H. Gibson shall have the privilege of buying the above described property, at any time within the term of this lease, for the sum of $3,000.   Then in that case the last month's rent shall be free, and the said John H. Gibson have the privilege of assuming the $2,000 mortgage now standing against the above described property."

33

Upon a trial to the district court, a decree was rendered in favor of defendant in error, and requiring the performance of the contract. Plaintiff in error, who was defendant below, brings the cause into this court by proceedings in error.

It is contended by defendant in error in his brief that this proceeding should be dismissed, " For the reason that it is an equity cause and must be brought to this court by appeal, and the transcript filed within six months, which was not done in this case."

It has been the settled law of this state since the decision of *White v. Blum*, 4 Neb., 557, that appeal is not an exclusive remedy in equity cases. That such cases are subject to review on error. See also *Baldwin v. Foss*, 16 Neb., 299. The case is properly in this court.

It sufficiently appears by the bill of exceptions that defendant in error took possession of the real estate described in the lease soon after its execution, paying the rent as it matured, until the 1st day of July, 1886, when he notified Warner E. Smith, the brother and agent of plaintiff in error, that he would avail himself of the provisions in the lease above quoted and purchase the property. After detailing a conversation between himself and Warner E. Smith, defendant in error testified as follows:

Q. When was the next time, after this last conversation that you have related, that you had any conversation with him about taking this property?

A. It was on the 8th day of July.

Q. State fully what was said and done between you at that time, relative to the taking of the property?

A. I went to his residence and found him, on that evening, somewhere towards evening, four to six o'clock in the evening. He came up to the fence and met me, and I told him then that I was prepared to take the property according to the contract. He said, "That suits me." "Now," says I, "Mr. Smith, on the tenth day of this

month I am going to Toronto, Canada, with the Knights of Pythias excursion, as chairman of the transportation committee, and that being the case I will be very anxious to have this matter closed and papers made out so I can get them on record before I leave Omaha;" and I says, "Mr. Smith, can you do that? and will you do it?" And he says, "Yes, sir, I will." That is probably all at that time that was material; there might have been some minor conversation at that time.

Q. What was next done in this matter, after that conversation?

A. On the 9th of July I was looking for Mr. Smith, around at his place of business and about town generally, being quite anxious; I think I met him once on the 9th in the earlier part of the day, and he told me there was some talk about an abstract; that he thought they had one; that a friend of his, Mr. Powers, had, he thought, had an abstract, and it was in Blair; he had tried to telephone him at Blair to ascertain the facts in the matter; and I had at that time some conversation with him relative to hurrying up the matter on account of my leaving town, and he at that time signified that he would have the papers ready; from that time until the afternoon of the 10th I was unable to find him any place, although I tried several times; I went to his house and inquired for him, and they said he hadn't been to dinner but probably would be soon, and I started down town on one car and found him coming up on another, and I got off and went up with him to his residence, and there held another conversation with him; he talked with me awhile, a few minutes, and he said, "It is no use to mince matters; we may as well be plain about it as any way; I would have no objection to making these papers if it wasn't for the condition under which you are getting the money; I have ascertained where you are going to get the money, and I find it is from Mr. Monell, the party who has the first mortgage." I told him I did

not see that that made any difference; that his money was as good as any one's else, and after a few minutes' conversation he absolutely refused; I said to him, "You have rather let me into the hole, as I have to leave the town this evening, yet," I says, "I will endeavor to be back in season to attend to this matter."

Q. Did he make any other objection beside the fact that you were going to get the money of the man who held the first mortgage?

A. None whatever.

From the testimony of Warner E. Smith, who was a witness for plaintiff in error, we copy the following, after a reference to the conversation above alluded to.

Q. Do you remember in that conversation, on the 8th day of July, of saying in response to his talking about the property being conveyed to him, that that would suit you?

A. I don't remember those exact words. No, it is about fair to deny the charge.

Q. Do you remember what you did say?

A. I don't remember the exact words.

Q. In substance?

A. That it was probably all right.

Q. Did he tender you any money on that day?

A. No.

Q. Did he say that he had the money with him?

A. No, sir.

Q. Did he then say he was ready to take the property?

A. He did.

Q. The next conversation was at what time?

A. The next day, I believe.

Q. Do you remember what was said on that day concerning the purchase of the property?

A. It was something of the same thing.

Q. Did he on that day tender you the thousand dollars?

A. No, sir.

Q. Do you remember the conversation, the next day, the 10th?

A. I do.

Q. What was said concerning the purchase of the lot on that day?

A. Mr. Gibson met me on the street car, and when we got off it was the same conversation that passed, and I told him that the way the matter stood, his borrowing the money on the property that was incumbered by a prior mortgage to the same man would, I thought, embarrass the other property which the mortgage covered, and property in another part of the state ; and told him that unless he, Mr. Monell rather, would release that, give us some guarantee that in case of failure that the mortgage should not come back on this property, that I did not see how the thing could be done. I told him I did not want to mislead him, but that was the plain fact in the case.

Upon this branch of the case it is insisted that there was no memorandum of the contract in writing, as required by the statute of frauds. To this we cannot assent.

Section 5 of chapter 32 of the Compiled Statutes is as follows :

"Every contract for the leasing for a longer period than one year, or for the sale of any lands, or any interest in lands, shall be void unless the contract or some note or memorandum thereof be in writing, and signed by the party by whom the lease or sale is to be made."

The contract giving the option was in writing, signed by the party by whom the sale was to be made. It was good during the term of the lease, if not withdrawn, and if accepted agreeable to its terms, and could be enforced. As we have seen, defendant in error accepted the offer in July, and it thereupon became a contract for the sale of real estate, capable of being enforced. It was not necessary that the acceptance should be in writing. Frye on Specific

Performance of Contracts, Sec. 292. Pomeroy on Contracts, 76. Waterman on Specific Performance of Contracts, Sec. 137. 1 Greenleaf on Evidence, Sec. 268. *Johnston v. Trippe*, 33 Federal Reporter, 530. *Otis v. Paine* (Tenn.), 8 S. W. Reporter, 848. 1 Parsons on Contracts, 7th edition, Sec. 46.

It appears that, at the time referred to, no tender of the purchase price was made, but this is unnecessary, by reason of the refusal of the agent of plaintiff in error to carry out the contract. *Kellogg v. Lavender*, 9 Neb., 425. *Post v. Garrow*, 18 Id., 682. *Welch v. Darling* (Vt.), 7 Atlantic Reporter, 547.

A tender was made to plaintiff in error, personally, before the commencement of the action, which was refused.

It is next contended that Warner E. Smith was not the agent of plaintiff in error, and, therefore, the acceptance of the offer contained in the lease could not bind her. It appears that the contract of lease, although signed by plaintiff in error, was originally made by Warner E. Smith, as her agent; that its terms were all agreed upon by him, and reduced to writing in her absence; that the rent, as it matured, was collected by him, and that he frequently called upon defendant in error to know if he was going to accept the offer contained in the lease, and purchase the property; that no objection of any kind was made by plaintiff in error at the time the acceptance was made by defendant in error, although she had knowledge of what was being said and done.

We again quote from his testimony, as follows:

Q. Did you, after having the conversation with John H. Gibson, on the 8th, 9th, or 10th of July, indicate what was said at any of those times to your sister, Nellie R. Smith?

A. Not in detail.

Q. Did you say anything to her concerning the conversation on the 8th, 9th, or 10th of July, with John H. Gibson?

A.   I don't remember the exact conversation, but probably in the family I had stated that Mr. Gibson had talked to me about the place, and that I also told them of the conversation in regard to that mortgage.   That is about the substance of what I stated.

Q.   Did you, in conversation with your sister, or in her hearing, say to her that Mr. Gibson had made you a tender, or had the money and was ready to take the property?

A.   Not that he had made any tender, or anything of that sort, but I said that Mr. Gibson had been to me in regard to the property, because the folks saw him there at the gate.

It thus sufficiently appears that plaintiff in error was fully aware of the election of defendant in error to take the property at the price named.   It appears that, immediately after the last conversation referred to, defendant in error went away, and was gone until about the 9th of August.   After his departure Warner E. Smith, as the agent of plaintiff in error, called at his place of business and demanded the rent for the month of July.   No provision having been made for its payment, he did not receive it, when he, for plaintiff in error, placed the matter in the hands of a firm of attorneys, with directions to proceed to get possession of the property, and on the 4th day of August a notice to quit was served, and on the 10th of August an action of forcible detention was commenced in the justice's court, for the possession of the property.   A trial was had, which resulted in a judgment in favor of plaintiff in error for the restitution of the property, but upon an appeal bond being filed, the cause was transferred to the district court, where it is now pending.

It is now insisted that defendant in error did not elect to purchase the property until after he was in default in the payment of rent, and that, therefore, under the provisions of section 1021, the acceptance was not within the term of the lease.   That section is as follows:

"A tenant shall be deemed to be holding over his term whenever he has failed, neglected, or refused to pay the rent, or any part thereof, when the same was due, and judgments, either before the justice or in the district court, under this chapter, shall not be a bar to any after action brought by either party."

It is true that the rent for the month of July had not been paid at the time of the service of the notice to quit, and that ordinarily the term of the lease would thereby have expired. But as we have seen, the notice of acceptance was given before the expiration of the month of July, and before there could be said to be any default in the payment of rent. In addition to this, it may be observed that, by the terms of the lease which we have quoted, if there was a valid acceptance of the offer contained in the lease, no rent would be due for the month of July. His position thereafter was that of owner, and no rights could accrue to plaintiff in error by reason of her refusal to abide by the terms of her contract. If there was an acceptance, it was completed on the 8th, 9th, or 10th of July, and no further action could have been taken thereunder by defendant in error, short of a suit to enforce the contract, for the reason that a compliance had been refused, on the ground that he was borrowing the money from a person who already had a mortgage on the property; it was, therefore, virtually within the terms of the lease. It further appears that, after the acceptance of the offer by defendant in error, and before there could have been any default in payment of rent, to-wit, on the 14th day of July, plaintiff in error executed to John J. Monell, the same party from whom she had been informed defendant in error was to procure the money, a mortgage on the real estate in question, to secure the sum of one thousand dollars at that time borrowed from Monell by her.

The decree rendered by the district court contains this finding: "The court further finds, that since the execu-

tion of the lease and option aforesaid, and since the accept-ance of said option by plaintiff, that defendant has executed a second mortgage on the property described in plaintiff's petition, to John J. Monell *et al.*, for the payment of $1,000, and that this amount, together with the $2,000 mortgage referred to in the aforesaid lease and option, both of which mortgages are valid and existing liens upon said property, make up the full amount which plaintiff was to pay defendant, under the aforesaid contract, for said land, and that plaintiff has nothing more to pay under aforesaid contract, *to which finding defendant excepts.*

"It is therefore ordered, adjudged, and decreed by the court that defendant Nellie R. Smith, within ten days from the entry of this decree, convey said property, to-wit, lot 8, block 8, Hanscom Place, Douglas county, Nebraska, to plaintiff John H. Gibson, by a good and sufficient deed, with covenants of general warranty, subject to the payment by plaintiff of the mortgages heretofore mentioned, to-wit: One from Warriner E. Smith and wife to John J. Monell *et al.*, for the payment of $2,000, given July 11, 1885, and recorded in book 26 of mortgage record of Douglas county, Nebraska, at page 174; and one from Nellie R. Smith to J. J. Monell *et al.*, for the payment of $1,000, given July 14, 1886, and recorded in book 39 of aforesaid mortgage record, at page 444; and that in default of such conveyance this decree shall have the same effect and operation as such deed," etc.

To this part of the decree plaintiff in error objects, and assigns the same for error.

It is contended, and correctly, that the contract contemplated the payment of the $1,000 in cash.

As we view the case, if defendant exercised his right to purchase within the time given by the lease, he then became an occupant of the premises, as owner, subject to his compliance with the contract, which could have been enforced, or not, at the option of plaintiff in error. This possession,

under such contract, was notice to Monell and to others of his rights under it, and that plaintiff in error could not create a valid lien upon the property by the execution of the second mortgage. The pending contract then in force could not be changed by her in that way, and therefore, so far as defendant in error was concerned, no valid lien was created by that mortgage. In the absence of proof to the contrary, it must be presumed that Monell acted in good faith in loaning the money and taking the mortgage, and his rights should be protected, if possible. This can be done to the extent of the principal of the mortgage, and yet enforce the contract according to its terms. The decree of the district court should have been that defendant in error be required to pay the money tendered, $1,032.50, into court, and that Monell be notified of that fact, and given the right to accept the money in payment of his mortgage, and that the mortgage be canceled. To that extent the decree of the district court must be modified.

It is shown by the testimony of defendant in error that he tendered to plaintiff in error $1,000, as the performance of his contract, and in addition to that, the sum of $32.50, as rent due to plaintiff in error to the time of the commencement of this action. He will, therefore, be required to pay into the clerk of the district court, within fifteen days from this date, the sum of $1,032.50, the same to be delivered to Monell in satisfaction of his mortgage, and upon the same being paid to him, or so much thereof as may be necessary to satisfy it, the mortgage to be canceled.

As thus modified, the decree of the district court is affirmed. But in case of his failure so to pay the money hereby required at the time named, the decree of the district court will be reversed and the cause dismissed.

JUDGMENT ACCORDINGLY.

THE other judges concur.