28  359
30  538

LOUIS SCHIELDS v. JOHN A. HORBACH ET AL.

[FILED DECEMBER 31, 1889.]

Real Estate: OPTION: LEASE. In 1864 one H. leased for three years three and one-fifth acres of land in O. to S. at a yearly rental of $35, with the right to purchase for $1,600. S. thereupon took possession and erected two houses thereon, one for his own family and one for his foreman. He then removed his

family into one of said houses and has resided there ever since. In 1873 a new lease was made by H. as executor, and also a "proposition to S. to purchase said premises" for $1,946, with twelve per cent interest, "and what may be found due for taxes paid by me for 1864, '65, '66, '67, '68, '69, '70, '71, and interest at twelve per cent," and stating that "this proposition is made to enable S. to acquire title to said premises as a homestead, and this option to purchase shall continue during the lease he now holds," etc. A large amount of credits and moneys was paid by S. to H. on prior indebtedness, apparently on the contract. In 1878 a new lease was executed by H. as executor, under which S. continued in possession. *Held*, That the proposition to purchase remained open to S. to be accepted at any time during the existence of his lease, and that the lease of 1878 was in effect but a continuation of that of 1873 and 1864, and that S., on payment of the amount due on the purchase, with twelve per cent interest, together with the amount of taxes with twelve per cent interest thereon, was entitled to a conveyance.

APPEAL from the district court for Douglas county. Heard below before WAKELEY, J.

*John W. Lytle* and *P. O. Hawes*, for appellant, cited: *Smith v. Gibson*, 25 Neb., 511; *Blunt v. Tomlin*, 27 Ill., 93; *Perkins v. Hadsell*, 50 Id., 216; *Edwards v. Fry*, 9 Kas., 417; *Brown v. Jones*, 46 Barb. [N. Y.], 400; Fry, Spec. Perf., sec. 292; Pomeroy, Id., sec. 123; Waterman, Id., sec. 483.

*A. N. Ferguson* (*George B. Lake*, of counsel), for appellees, cited: *Seymour v. Street*, 5 Neb., 85; *Cheney v Eberhardt*, 8 Id., 423; *Hartley v. Dorr*, 15 Id., 451; *Savage v. Pelton*, 17 Id., 144; *Sang v. Beers*, 20 Id., 365; *Manning v. Cunningham*, 21 Id., 288.

MAXWELL, J.

This is an action to enforce the specific performance of an alleged contract for the sale of real estate.

On the trial of the cause in the court below, judgment

was rendered in favor of the defendant and the action dismissed.

The testimony shows that in the year 1864 Schields and Horbach entered into a contract as follows:

"MEMORANDA OF TRANSACTION BETWEEN J. A. HORBACH AND LEW SCHIELDS.

"1864, January 1. — J. A. Horbach leased to Lew Schields for three years, at an annual rental of $35 per year, and Schields to pay all taxes assessed on said premises during lease.

"1864, May 20.—Contracted with Lew Schields to do brick and stone work and plastering on dwelling house at specified prices in written contract, to be completed and settled for October 1, 1864, and at same time bargained to sell him the premises leased, $700 of the price of same to be credited on his work at that date, and balance, $900, to be settled for with his note due one year from October 1, 1864, with ten per cent, and after due at twelve per cent until paid.

"Said Schields failed to complete at the time, and no part of same being paid or credited him, settlement was made in 1865, and he retained possession of premises under his old lease extended to present time, but failed to pay lease or taxes. In 1869 and 1870, and prior to those years, Schields became indebted to said Horbach for lime, plaster, hair, and cement, for which he settled by notes, all of which remain unpaid, and on the 14th day of January, A. D. 1873, full settlement being made, there is found to be due on account, merchandise, and interest, $383.05, for which said Schields gives his note due one day after date with interest at twelve per cent, and all leases and contracts being canceled and settled, a new lease is given to said Schields for one year to occupy said premises for cultivation and dwelling for the consideration of $50, and taxes for 1873. This making a full and final settlement of all

claims and demands due between said Schields and Hor-
bach up to this date.

"Signed by the parties this date, January 14, 1873.

                                        "J. A. HORBACH.
                                        "LOUIS SCHIELDS.
"In presence of
      "WM. J. KENNEDY."

This statement evidently was drawn up and signed on
the 14th of January, 1873, and is valuable as showing the
true nature of the transaction between the parties and what
had been done under it.   On the same day a new lease was
drawn up, signed, and acknowledged, as follows:

"This lease, made and entered into this 14th day of
January, A. D. 1873, by and between J. A. Horbach, of
Omaha, Nebraska, of the first part, and Lew Schields, of
Omaha, Nebraska, of the second part,

"Witnesseth, that the said party of the first part, in
consideration of the rents, covenants, and agreements here-
inafter contained, to be paid, kept, and performed by said
party of the second part, hath demised, leased, and let, and
by these presents doth demise, lease, and let, unto the said
party of the second part that certain piece of ground em-
braced in the enclosure known as Schields' brick yard, con-
taining about three acres and one-fifth · of ground, in the
southwest quarter of section 15, township 15 north, range
13 east, and lying west of the center of Twenty-first street,
in Omaha, being the same premises as leased to said Schields
for brick yard purposes, on that 1st day of January, A.
D. 1864, for the term of three years and continued to this
date and canceled.

"The said lessee shall have the right, at the expiration of
said term, to remove all buildings by him placed on said
premises, *only on* condition that he will pay the rent and
fully perform all the covenants and agreements hereinafter
contained, and that he shall have fully paid his note of
$383.05 of January 14, 1873.

"To have and to hold the same unto the said lessee for the term aforesaid, and the said Louis Schields, in consideration of the leasing aforesaid, doth hereby agree to pay as rent for said premises the sum of $50 for the term of one year from this date, at which time this lease will terminate, and the said rent to be paid during the term of this lease in the following manner, viz.: $25 on or before the 14th of January, A. D. 1873, and $25 on or before the 14th day of November, A. D. 1873.

"The right to remove buildings from said premises at the termination of this lease is intended also to cover the one-story dwelling erected thereon by said Schields under his former lease, and all improvements or machinery pertaining to his brick yard, excepting that no right is given to remove any part of the fencing around said enclosure.

"The said party of the second part further agrees to pay all taxes and assessments of every kind that may be levied or assessed on said premises during the term above granted, and that at the expiration of said term, or at any earlier termination of this lease, in case it should be sooner terminated, he will quietly and peaceably yield up possession of said premises unto J. A. Horbach, his agent, attorney, or assigns, in as good condition as the same were when entered upon.

"And it is further expressly agreed and understood by and between the parties hereto, that in case the rent above reserved, or any part thereof, be not paid at the time the same becomes due and payable, or if any other condition or agreement herein contained on the part or behalf of the said Louis Schields be not by him fully complied with and performed, then and in that case the said J. A. Horbach, his agent, attorney, or assigns, as aforesaid, shall have the right, at his or their option, to declare this lease at an end, and thereby cancel and annul the same, and to retake immediate possession of said premises, and to

put out and remove any person or persons occupying the same.

"J. A. HORBACH.

"LOUIS SCHIELDS.

"In presence of

"WM. J. KENNEDY.

"January 16, 1873."

On the same day, viz., January 15, 1873, the following proposition was duly signed and delivered by Horbach to Schields:

"OMAHA, January 15, 1873.

"Having settled up all claims with Lew Schields to date, I now make him this proposition to purchase said premises of three and one-fifth acres: If said Schields will pay up his note of January 14, for $383.05 and interest on same, in full within six months from date, I will sell him the premises leased to him January 14, 1873, for $1,946 with twelve per cent interest from this date, and the additional price or sum of what may be found due me for taxes paid by me for 1864, '65, '66, '67, '68, '69, '70, '71, and 1872, and interest at twelve per cent on such amounts from date they were paid by me.

"This proposition is made to enable Schields to acquire title to said premises as a homestead, and his option to purchase shall continue during the lease he now holds, *provided one half of the same shall* be paid up during 1873 and the balance during 1874 with interest.

"J. A. HORBACH."

The note referred to in this memorandum, for $383.05, was not paid in six months, but it was paid in full in 1874 and 1875 and payment thereof accepted by Horbach.

In 1878 a third lease was executed by Horbach as follows:

"This lease, made and entered into this 14th day of January, A. D. 1878, by and between J. A. Horbach, executor of the estate of A. Horbach, deceased, of the first

part, and Lew Schields, of Omaha, Nebraska, of second part,

"Witnesseth, that the said party of the first part, in consideration of the rents, covenants, and agreements hereinafter contained, to be paid, kept, and performed by the party of the second part, doth demise, lease, and let unto the said party of the second part, the tract of land known as the Schields brick yard, comprising three and one-fifth acres, more or less, in the southwest quarter of the northwest quarter of section 15, town 15 north, range 13 east, for the term of three years, at an annual rental of $50 per year and taxes, payable annually before the expiration of each year.

"To have and to hold the same unto the said lessee for the term aforesaid.

"And the said Lew Schields, in consideration of the leasing aforesaid, doth hereby agree to pay as rent for said premises, the sum of $50 annually on or before January 14, each year, viz., January 14, 1879, 1880, and 1881, at the office of J. A. Horbach, in the city of Omaha; and it is mutually agreed between said Schields and said J. A. Horbach that if said lease money is paid when due, he shall have the right to remove his dwelling house now on said premises and so placed there under former lease with said Horbach.

"It is further agreed that said Schields shall not make brick on said premises without the consent of said party of first part, and said Lew Schields further agrees that at the expiration of the term above granted, or at any earlier termination of this lease in case it should be sooner terminated, he will quietly and peaceably yield up possession of said premises unto said J. A. Horbach, executor, or his legal representatives, in as good condition as the same were when entered upon.

"And it is further expressly agreed and understood by and between the parties hereto, that in case the rent above

reserved, or any part thereof, be not paid at the time the same becomes due and payable, or if any other condition or agreement herein contained on the part or behalf of the said Lew Schields be not by him fully complied with and performed, then and in that case the said J. A. Horbach, executor, or his agent, shall have the right at their option to declare this lease at an end, and thereby cancel and annul the same, and to retake immediate possession of the said premises, and to put out and remove any person occupying the same.

"It is understood that the covenants and agreements in this lease shall succeed to and be binding upon the respective heirs, executors, administrators, and assigns of the parties hereto.                J. A. HORBACH,

"*Ex'r of Estate of A. Horbach, Dec'd.*

"LOUIS SCHIELDS.

"In presence of

"J. BUDD."

There is a receipt of Horbach to Schields in the record as follows:

"Received on settlement of Lewis Schields, March 3, 1875, after paying his note and interest from January 17, 1874: By balance of $110 pd. to K. Feb'y 1, '75, and bill of work, $94.35, in 1874. The sum of $123.20 to his credit; also, received of him to collect note $25 E. C. Erfling, and also a second note $25 of E. C. Erfling and order on Shropshire to collect $55.23; also hold assigned to W. I. Kennedy to collect judgment against E. Creighton and Unitarian church and mechanic's lien on Union Brewery over $400 and int. to collect for him and Vandamaker claim.                J. A. HORBACH."

There is also a credit September 30, 1875, in favor of Schields of $83.55 for labor and material, and a like credit in October, 1875, of $29.10.

August 24, 1876, the plaintiff is credited on account $131.35.

Schields v. Horbach.

April 15, 1879, he is credited on account $11.

September 30, 1879, he is also credited on account $35.

September 30, 1879, to credit, $35.

December 31, 1879, there is a credit of $41.10.

June 10, 1882, account of Clemmens, $86.

December 30, 1884, credit on account, $46.

The testimony also shows that the defendant collected the Erfling claims, $50; the Shropshire claim, $55.23, and $206.10 of the lien on the brewery, and all or nearly all of the above claims except the Creighton and Vandamaker.

The brewery was burned and a part of that claim thereby lost; but whether this loss was to be borne by the plaintiff or defendant is not clear.

The defendant therefore received in moneys and credits from the plaintiff, after the payment of the note for $383.05, more than $900.

Now, to what purpose was this money to be applied? The testimony shows that about January 1, 1864, the plaintiff rented the land in question of the defendant for three years at a yearly rental of $35, and soon afterwards with the right to purchase the land for $1,600; that the plaintiff erected two houses on the land, one for himself and one for the foreman of his brickyard; that the plaintiff in April, 1864, moved his family into the house erected for himself and has continued to reside there ever since and it is now his home.

This right to purchase his home was preserved in the arrangement made in January, 1873, and the language of the proposition leads us to infer that the defendant desired him to understand that he was friendly to him and would aid him as far as possible. In effect he says to the plaintiff, I want to enable you to purchase your homestead and I will take $1,946 with twelve per cent interest from this date, but in addition you must repay me the taxes on said land from 1864 with twelve per cent interest and this right shall continue "during the lease he now holds." It is

true there were certain conditions attached to this proposition, such as the payment of the note within six months and the payment of one-half of the purchase money in an indefinite time, but these do not seem to be material, as the note was actually paid and the payment thereof accepted and credited, and time is not of the essence of the contract.

In *Morgan v. Bergen*, 3 Neb., 214, it is said: "In equity, in ordinary cases where there is nothing special in the nature of the property or of the purpose for which it was intended to be purchased, although a particular day may be fixed for the completion of a contract, it is considered that the general object being the sale of the estate for a given sum, it is not an indispensable requisite to the granting of relief, that the party seeking it should have performed precisely at the day. If he has not been guilty of gross neglect, if his laches can be reasonably explained and be shown to be consistent with fairness and good faith, a court of equity will still afford relief; but the parties may make *time* the essence of the contract, so that if there be a default at the day, without any just excuse and without any waiver afterwards, the court will not interfere to help the party in default. (*Wells v. Smith*, 7 Paige, 22; *Benedict v. Lynch*, 1 Johns. Ch., 370.)"

It is apparent from the testimony that the plaintiff and defendant had had considerable dealings with each other before the written proposition of 1873, and that such dealings continued to a greater or less extent to 1882.

The parties were well acquainted apparently, and the ordinary mode of payment adopted by the plaintiff was to assign an account for labor or material against some one to the defendant, and such accounts seem to have been accepted by him and if possible collected. It may be said, however, that even if the proposition ran with the lease of 1873, it was terminated on the taking effect of the new lease made in 1878. But why? The same reasons existed in 1878 for the purchase by the plaintiff of the homestead that were

in force in 1873. The principal difference between the 1878 lease and that of 1873 is that that of the later date is executed by the defendant as executor of his father's estate while that of 1873 is executed in his own name. He seems to have had ample authority to execute the leases of 1864, 1873, as well as that of 1878, and there is nothing to show that at the latter date it was the intention of the parties to abandon the proposition to purchase while the credits of the plaintiff held by the defendant at that time show that he is entirely mistaken in his oral testimony as to the condition of the account between them. The proposition of 1873 is to be construed in the light of that of 1864. That was not regarded as terminated by the new lease of 1873, although the evidence of it was then renewed and the price somewhat advanced. The proposition, however, was to the plaintiff to purchase for a certain price if he so elected during the leasehold estate. This under the lease of 1864 evidently was not regarded as terminating at the end of three years; so under the lease of 1873 it evidently continued for years beyond the time expressed therein.

Here was the lessee in possession at a fixed rent with the privilege to purchase at a fixed price at any time during the lease. The property was his home. He evidently is poor, somewhat illiterate, and addicted to the use of intoxicating liquors. He seems to have trusted implicitly in the defendant, and it is evident that the plaintiff intended his payments to be applied on the purchase.

The defendant also seems to have been anxious to make it appear that the payments were not made on the purchase, as the later receipts written by him seek to apply such payments on rent and taxes. This does not aid him, because if there was an outstanding proposition which the plaintiff could accept at any time during the existence of the lease it would not prevent the application of the funds to that purpose if the proposition was accepted, while had there been no proposition still pending, it would have been

24

unnecessary to use such language. The inference therefore is against the defendant. The defendant also, according to his own testimony, recognized the fact that the plaintiff had rights in the land as late as 1879 or 1880, by offering to convey a lot to plaintiff's wife if he would move his house thereon. The house was moved, but the plaintiff testifies that the cause for the removal was the fact that a bank of earth was so close to the house as to be in danger of falling down. The exact facts in the matter it is unnecessary to determine. The exact date of the notice to quit given by the defendant to terminate the lease does not appear, but it is evident that the plaintiff before the termination of the lease exercised the right to take the land, and thereupon brought this action to enforce the contract. The case in many of its features resembles that of *Smith v. Gibson*, 25 Neb., 511; in which case it was held that the option to purchase might under the terms of the lease be exercised at any time during its existence. The circumstances are more favorable to the lessee in this case than in that, and the proposition more liberal.

The defendant well knew from the first that the plaintiff had no means to pay for the property in question except those derived from his labor, and that in all probability he would not be paid promptly at the day. This had been his experience under the proposition of 1864, yet he held out encouragement to him to purchase the land, not only in the proposition itself, but by accepting accounts in payment and collecting them. The proposition was to continue as long as the lease continued, and this under the circumstances of the case was not terminated by the lease of 1878. The defendant has received part payment at least for the land and cannot retain this and repudiate the contract. That he has received such part payment there is no doubt from the written evidence before us. The oral testimony of both the plaintiff and defendant is subject to the imperfections of the memory of the witnesses and it is

evident that both have forgotten or have not stated some of the facts.   We have, therefore, placed our decision upon the written evidence in the case, the situation of the parties, and facts which are conceded or not denied.   The defendant has amply guarded his rights in the premises by requiring the payment of interest at twelve per cent and the repayment of all taxes with interest at that rate.

The amount due, both on the contract and for taxes with interest, must be paid by the plaintiff before he is entitled to a conveyance.

The amount of taxes due on this particular piece of land does not appear; neither can we determine from the record the exact amount paid by the plaintiff to the defendant.

A reference will therefore be ordered to ascertain both amounts and the amount due the defendant upon the contract with twelve per cent interest, both on the amount due for purchase money and on taxes.

The judgment of the district court is reversed, and upon the payment by the plaintiff to the clerk of this court of the amount found due within six months after the confirmation of the report of the referee the defendant will convey said land to the plaintiff, or in case of his neglect to do so for ten days this decree shall operate as a conveyance.

Rollin M. Strong is hereby appointed referee to take testimony and report to this court within thirty days.

JUDGMENT ACCORDINGLY.

COBB, J., concurs.

REESE, CH. J., dissenting.

Not being able to agree with my associates in the conclusion reached in this case, I will briefly give my reasons for such dissent.

Of the oral evidence submitted to the trial court it was testified in substance by plaintiff that he had practically

complied with the terms of this last agreement; that he had paid large amounts to defendant, consisting of cash, labor, and the assignments of certain claims which had been collected and appropriated by defendant, until he had complied with the terms in the contract; that it was understood and agreed that all of the payments and transactions between them by which defendant received money were to be applied to the purchase price of the land.

Upon the other hand it was testified by defendant that plaintiff had not complied with the terms of the contract; that the note for $383.05 was not paid for more than a year after the execution of the contract, and that all payments made by plaintiff to him were expressly made to be applied upon the rent.

Upon every material inquiry in the case, from beginning to end, there was a sharp conflict in the testimony of the two witnesses, that of defendant being supported in many instances by receipts executed by plaintiff, showing upon their face that the money was to be applied to the payment of taxes and rent for the ground in dispute. A large number of these were introduced in evidence, nearly all of which show the appropriation of money in that way by plaintiff.

It is true that plaintiff in his evidence had testified that defendant prepared all these agreements in writing for him to sign; that he signed them in many instances without reading them and without knowing their contents, and that he was not aware at the time the payments were made that defendant claimed to apply in the way in which it is stipulated in the receipt.

Upon the other hand defendant testified positively and directly that many of the receipts were read by plaintiff, and those which were not read by him were read to him, and that he was fully aware of their contents.

The whole matter was peculiarly within the discretion of the district court. The witnesses were before him; he

saw and heard them testify, and we are unable to say that the finding was unsupported by the evidence.

Assuming that the facts were as stated by defendant, and of this the trial court was the judge, all other questions become immaterial to a decision of the case. Whatever may be the right of action of plaintiff as against defendant for the money had and received by him, if more than the amount actually due, need not be here considered, as he doubtless has a remedy.*

---

*A rehearing of the case was subsequently granted and the judgment of the court below affirmed October 7, 1890.