LOUIS SCHIELDS, APPELLANT, v. JOHN A. HORBACH ET AL., APPELLEES.

[FILED OCTOBER 7, 1890.]

1. **Real Estate:** OPTION: CONDITION PRECEDENT. The defendant gave the plaintiff a written proposition to sell certain real estate in the city of Omaha, for a specified price, conditioned that the plaintiff should pay within six months his note given to the defendant for merchandise, and pay the one-half of the price named during 1873 and the balance in 1874. *Held*, That the payment of the note within the time limited was a condition precedent to the plaintiff's right to accept the offer.

2. ——: ——: ACCEPTANCE. Such proposition, to be binding, must be accepted on the conditions proposed within the specified time, unless the party making the offer continues it to the time of acceptance.

3. ——: ——: SPECIFIC PERFORMANCE DENIED. Under the evidence it was *held*, that the plaintiff is not entitled to a specific performance of the agreement.

ON rehearing.

*John W. Lytle*, and *Pat. O. Hawes*, for appellant.

*George B. Lake, A. N. Ferguson*, and *Ambrose & Duffie, contra*, cited : *Delaney v. Linder*, 22 Neb., 280 ; *Coon v. Knap*, 8 N. Y., 402 ; *Eliason v. Henshaw*, 4 Wheat. [U. S.], 225 ; *Smith v. Gibson*, 25 Neb., 511 ; Pomeroy, Specific Performances, 334, 335, 387, 388 ; *Mason v. Payne*, 47 Mo., 517; *Pott v. Whitehead*, 5 C. E. Green [N. J.], 55 ; *Kerr v. Purdy*, 51 N. Y., 629 ; *Maughlin v. Perry*, 35 Md., 352–360 ; *Jones v. Noble*, 3 Bush [Ky.], 694 ; *Brooks v. Garrod*, 3 K. & J. [Eng.], 608 ; *Hancock v. Charlton*, 6 Gray [Mass.], 39 ; *Jones v. Robbins*, 29 Me., 351 ; *Hall v. Delaplaine*, 5 Wis., 206 ; *Pritchard v. Todd*, 38 Conn., 413; *Decamp v. Feay*, 5 S. & R. [Pa.], 325 ; *Shortall v. Mitchell*, 57 Ill., 161 ; *Young v. Daniels*, 2 Clarke [Ia.], 126 ; *Taylor v. Longworth*, 14 Pet. [U. S.], 172 ; *Godbold v. Lambert*, 8 Rich. Eq. [S. Car.], 155–164 ; *Lott. v DeGraffenried*, 10 Id., 346 ; *Wright v. Davis*, 28 Neb., 479 ; Waterman, Spec. Perf., 90, 196, 198, 434, 460, 470, 471, 475, 490, 493 ; *Little v. Thurston*, 58 Me., 86 ; *Warren v. Richmond*, 53 Ill., 52 ; *Ewald v. Lyons*, 29 Cal., 550 ; *Holland v. Hensley*, 4 Ia., 225 ; *Minturn v. Seymour*, 4 Johns. Ch. [N. Y.], 498* ; *McIntire v. Hughes*, 4 Bibb [Ky.], 186 ; *Dawson v. Dawson*, 1 Dev. Eq. [N. Car.], 93, 99 ; *Banks v. May's Heirs*, 3 A. K. Marsh. [Ky.], 436* ; *Bibb v. Smith*, 1 Dana [Ky.], 580 ; *Tucker v. Woods*, 12 Johns. [N. Y.], 190 ; *Meynell v. Surtees*, 1 Jur. (N. S.) [Eng.], 737; *Williams v. Williams*, 17 Beavan [Eng.], 213 ; *Tucker v. Clarke*, 2 Sandf. Ch. [N. Y], 96* ; *Cutter v. Powell*, 6 T. R. [Eng.], 320 ; *Evans v. U. S. Life Ins. Co.*, 64 N. Y., 304 ; *Boston & M. R. Co. v.*

*Bartlett*, 3 Cush. [Mass.], 224; *Atlee v. Bartholomew*, 69 Wis., 43; *McCulloch v. Eagle Ins. Co.*, 1 Pick. [Mass.], 278; *Lamon v. Jordan*, 56 Ill., 204; *Adams v. Lindell*, 1 B. & Ald. [Eng.], 681; *Warren v. Bean*, 6 Wis., 120; *Marsh v. C., R. I. & P. R. Co.*, 75 Ia., 361; *Low v. Tread-well*, 12 Me., 441; *McClintock v. Lang*, 22 Mich., 212; *Tiernan v. Roland*, 15 Pa. St., 429; *Porter v. Dougherty*, 25 Id., 405; *Davis v. Hone*, 2 Sch. & Lef. [Ir.], 341; *Brashier v. Gratz*, 6 Wheat. [U. S.], 528; *Roby v. Cos-sitt*, 78 Ill., 638; *Cooper v. Brown*, 2 McLean [U. S.], 495; *Redish v. Miller*, 27 N. J. Eq., 514; *Delevan v. Duncan*, 49 N. Y., 485; *Lauer v. Lee*, 42 Pa. St., 165; *Washington v. McGee*, 7 T. B. Mon. [Ky.], 131; *Huff-man v. Hummer*, 18 N. J. Eq., 83; *Rogers v. Saunders*, 16 Me., 92; *Hull v. Noble*, 40 Id., 459; *Higby v. Whit-taker*, 8 O., 201; *Remington v. Kelly*, 7 Id., 432; *Galley v. Galley*, 14 Neb., 176; *Doolittle v. Wheeler*, 18 Id., 136; *Hutchinson v. State*, 19 Id., 263; *Dodge v. Ruels*, 20 Id., 35; *Wither v. Hoover*, 24 Id., 605; *Traphagen v. Shel-don*, 19 Id., 76; *Seymour v. Street*, 5 Id., 85; *Callahan v. Callahan*, 7 Id., 41; *Bell v. Sherer*, 12 Id., 412; *New-man v. Muller*, 16 Id., 523; *Sang v. Beers*, 20 Id., 372; *Charles v. Ashby*, 14 Id., 251.

NORVAL, J.

After the filing of the decision (28 Neb., 359), a re-argument was allowed upon the application of the defend-ant. Upon the second hearing the case was ably presented by learned counsel on both sides, by printed briefs and by oral argument. We have fully examined and reconsidered the testimony contained in the bill of exceptions, and have reached a conclusion different from that expressed in the former opinion.

It appears from the testimony that on January 1, 1864, the defendant leased to the plaintiff the real estate in con-

troversy, situated in the city of Omaha, consisting of three and one-fifth acres, at an annual rental of $35, the plaintiff to pay all taxes assessed on the premises during the lease.   The following May the defendant contracted to sell the plaintiff the leased premises for $1,600, of which $700 was to be paid by October 1, by doing the brick and stone work, and the plastering on a dwelling house for the defendant.   The balance Shields was to settle for with his note, payable October 1, 1865.   It is not claimed that this note was .ever executed by the plaintiff.   Upon the trial he testified that the $700 was paid in work, as agreed. This was, however, denied under oath by the defendant. While. it · is true that the plaintiff did considerable work upon the defendant's house, the clear preponderance of the evidence shows that the plaintiff was fully paid therefor in cash, and by orders given by Schields, which were accepted and paid by the defendant.   Horbach testified upon the trial, that nothing was ever paid by Schields upon the agreement of 1864.   In this the defendant is corroborated by the memorandum of settlement, made between the parties on January 14, 1873, as well as by the fact that the plaintiff, on the same day, accepted a new lease of the premises.   There can be no doubt that the agreement to convey was mutually canceled by the parties.   It is so conceded by the plaintiff.

It also appears from the testimony that the plaintiff, from 1864 to 1873, paid neither rent nor taxes.   When the settlement was made on January 14, 1873, the plaintiff was indebted to the defendant for merchandise in the sum of $383.05, for which the plaintiff gave his note, bearing 12 per cent interest.   At the same time the defendant, in writing, leased the premises to the plaintiff for one year, for a rental of $50, the plaintiff also agreeing to pay the taxes for 1873.   On the same day this lease was entered into, or the day following, the defendant made to the plaintiff the following proposition in writing :

"OMAHA, Jan. 15, 1873.

"Having settled up all claims with Lew Schields to date, I now make him this proposition to purchase said premises of 3⅕ acres. If said Schields will pay up his note of Jan'y 14th, for $383.05, and interest on same, in full within six months from date, I will sell him the premises leased to him Jan. 14, 1873, for $1,946, with 12 per cent interest from this date, and the additional price or sum of what may be found due me for taxes paid by me for 1864, '65, '66, '67, '68, '69, '70, '71, and 1872, and interest at 12 per cent on such amounts from date they were paid by me.

"This proposition is made to enable Schields to acquire title to said premises as a homestead, and his option to purchase shall continue during the lease he now holds, provided one-half of the same shall be paid up during the year 1873, and the balance during 1874, with interest.

"J. A. HORBACH."

This was simply a proposition to sell the premises, and required the acceptance of the plaintiff to make it binding on either party. And it must have been accepted within the time named, and on the conditions proposed, to be of any validity, unless the offer was continued until it was accepted. (*Boston & Maine Ry. Co. v. Barrett*; 3 Cush., 224; *Larmon v. Jordon*, 56 Ill., 204; *Eliason v. Henshaw*, 4 Wheat. [U. S.], 225; *Potts v. Whitehead*, 20 N. J. Eq., 55; Waterman on Specific Performance, sec. 434.)

Was this proposition accepted by Schields? It will be observed that the option to purchase was in the first place conditional that Schields should pay his note of $383.05 within six months from the date of the proposition. There is no claim that any part of the note was paid within the time specified. But a very small portion was paid within a year, and the balance during the year 1875. Considerable importance was attached in the former opinion to the fact that the defendant accepted the money on the note

after the time limited in the option for its payment.   As we view the transaction, the receipt of the money after the time named for its payment, was not a recognition of the option.   The note was not given as a part of the purchase price of the land, but in settlement for merchandise previously sold by the defendant to the plaintiff.   Had the note been given as a payment on the premises, then the accepting of the money would have constituted a waiver of the forfeiture.   But the accepting by Horbach of the money due him on another transaction, certainly did not have the effect to revive the option given to the plaintiff to purchase the property.   The payment of the note within six months was a condition precedent to the plaintiff's right to purchase the land.   It is clear that the plaintiff acquired no interest in the property prior to 1875, for the note was not at that time fully paid.

The option given Schields to purchase, was also conditioned that he should pay one-half of the purchase money during 1873, and the balance in 1874.   The total payments made by the plaintiff prior to February, 1875, as testified to by Horbach, were only $222.25, which was less than one-half of the principal and interest due on the note. No part of the purchase money was paid during the years 1873 and 1874.

The defendant testified that after February 1, 1875, the plaintiff made numerous payments aggregating $1,029.68, which were applied in payment of the balance due on the plaintiff's note, and for rents and taxes ; that nothing was ever paid on the land, and that plaintiff owed a balance on rent and taxes of $97.54 on January 14, 1878.

The plaintiff testified that he made other payments in addition to those testified to by Horbach, and that all payments were made upon the purchase of the land.   The plaintiff put in evidence, Exhibit C, being a receipt signed by Horbach for various items, including certain notes and claims which were to be collected by the defendant.   It

appears from the testimony that this receipt was given for the purpose of preventing the creditors of Schields from subjecting the claims to the payment of his debts. Several of the notes included in the receipt were not at the time in Horbach's hands, but some of them were afterwards turned over to the defendant and were collected by him, and are included in the aggregate amount testified to by Horbach. Of the mechanic's lien on the Union brewery of $400, and interest included in the receipt, the amount of $206.10 only was collected, for which Horbach gives credit. The balance of this claim was uncollectible. The receipt recites that "the sum of $123.20 to his credit." The plaintiff claims this shows that the note was at that time fully paid, and that the sum of $123.20 was credited as a payment on the land, and that the amounts subsequently collected by Horbach should be applied for the same purpose. The defendant contends that the item of $123.20 was a claim against James Vandanaker. It appears from the defendant's testimony that this claim was never collected; that one Collins gave his note in settlement of the matter, and at Schields's request it was put into judgment, but was never paid. While the testimony is somewhat conflicting on the matter of payments, we fail to discover anything in the record that would justify us in disturbing the finding made thereon in favor of the defendant, by the district court.

The entire conduct of the parties, as disclosed by the testimony, shows that none of the conditions of the option, either precedent or subsequent, were waived. The lease entered into in 1873 was, by agreement of the parties indorsed thereon, extended to December 31, 1875, Schields agreeing to pay as rent, in addition, to the $50 and taxes stipulated for in the lease, thirty cents for each 1,000 brick made and burned by the plaintiff on the premises during the year 1875. The taking of an extension of the lease, and agreeing to pay an increased rent, is indicative that Schields at that time did not consider that he had acquired

any rights under the option of January 15, 1873.   It also appears that the defendant, in 1876, conveyed the lands in question to his father, A. Horbach.   On January 14, 1878, a new lease was entered into between the plaintiff and the defendant, as executor of the estate of A. Horbach, deceased, for the period of three years.   No objection was made by the plaintiff to the taking of a new lease from a different landlord, nor does it appear that the plaintiff at that time made any claim that he had an interest in the property.   The plaintiff subsequently paid rents under this lease, the receipts therefor specifying that the money was received on ground rent.   It is also established beyond question that at about the time the 1878 lease expired, the defendant leased two-thirds of the identical same property now claimed by Schields to one H. M. Hurlbut, for a term of four years, who took possession, planted two crops, and farmed the same during the entire term.   The plaintiff, having full knowledge thereof, made no claim upon either the defendant or Hurlbut for the land.   In the fall of 1879 the plaintiff moved his house near the south line of the tract in controversy.   Schields claims that he did this of his own accord, to get his house away from an excavation at the brick yard.   The defendant swears that the building was moved by his orders; that he told Schields if he would pay the balance due on rent, and the amount Schields had collected on the Creighton claim, and move his house to the south line, when the defendant came to lay out the tract into lots, that he would deed a lot to his wife.   Horbach says that the plaintiff agreed to this and moved the house in accordance with that arrangement.   The building not being moved far enough to suit the defendant, on his orders it was moved the second time.   The whole circumstances appearing in evidence are inconsistent with the position now contended for by Schields that he had any interest in the premises.   It is clear to our mind that Schields never accepted the proposition made by Horbach

in 1873.    Until that proposition was accepted, the plaintiff was not bound thereby.  Horbach could not have enforced the payment against Schields.    The plaintiff not being bound, he was not entitled to a specific performance. (Waterman on Specific Performance, sec. 196.)

The decree of the district court dismissing the plaintiff's bill was right and is

AFFIRMED.

THE other judges concur.