# CASES

## IN THE

# SUPREME COURT OF NEBRASKA.

| | |
|---|---|
| 1 | 3 |
| 1 | 249 |
| 5 | 301 |
| 10 | 174 |
| 12 | 422 |
| 17 | 300 |
| 18 | 39 |

| | |
|---|---|
| 1 | 3 |
| 49 | 268 |
| 50 | 639 |
| 52 | 115 |

## Mattis v. Robinson.

1. LANDLORD AND TENANT: *Tenant holding over.* A tenant for one year, holding over after the expiration of his term, cannot disclaim his relation, nor question his landlord's title.

2. ——: *Assailing his landlord's title.* Before he can be permitted to assail his landlord's title, he must surrender his possession, acquired under the lease.

3. ——: *Eviction or its equivalent necessary.* Wherever there is a paramount title in a third person, who has a right thereby to the possession, and it can be done without any collusion or bad faith to the lessor, the tenant, in order to prevent being expelled by the holder of that title, to whom otherwise he would be rendering himself liable as a trespasser, may yield the possession and attorn to or take from such holder of the title, a new lease, or he may abandon the possession. In neither case will he be liable to the first lessor for rent. In the former case, he may resist his first lessor's claim to the possession, by the new right thereby acquired.

4. ——: *Notice to his landlord.* In all cases, he should notify his landlord of his action.

5. ——: *Pierce v. Brown,* 24 *Vt.* 165, examined and overruled.

6. ——: *Buying in outstanding title.* A tenant buying in an outstanding title for the purpose of protecting his possession, shall have what he has paid and legal interest, and no more.

On the 24th of August, 1858, Russel Miller made to one Easly the note and mortgage to foreclose which this suit

was brought. Afterwards Miller died, leaving four daughters, all of whom were married — one to Robinson and one to Dowling. In 1863, Robinson made a verbal lease of the premises to Mattis, who was to pay to the four sons-in-law, in equal proportions, one-fourth of all the crops he raised on the land. This he did. The year having expired, he continued in possession. Dowling testified that he did so under an agreement made with him, for a lease for another year on the same terms as he had held the premises. But Mattis denied this. On the 16th day of September, 1864, Easly assigned the note and mortgage to Mattis for $300 : the amount then due for principal and interest being some $600. Thereupon, Mattis filed his bill for foreclosure, in the District Court of the then Territory of Nebraska. The defendants, who were the four daughters and their husbands, answered alleging Mattis' tenancy, and the purchase by him, while in possession, of the mortgage, at a large discount, and that he was, under the agreement for the lease, indebted to them for a large part of the sum paid by him for the mortgage. They also filed a cross bill for an account of the products of the premises, and to have the value of their portion thereof set off, against what he had paid for the note and mortgage.

The cause was heard upon pleadings and proofs before the Honorable WILLIAM F. LOCKWOOD, then one of the judges of the Territory, who rendered a decree of foreclosure for the full amount due on the mortgage. The defendants appealed to the Supreme Court of the Territory. On the admission of the State into the Union, the cause was removed into this court.

*J. M. Woolworth*, for the appellants.

*A. J. Poppleton*, contra.

CROUNSE, J.

MATTIS *v.* ROBINSON.

At the time of the purchase of the mortgage by Mattis, he was in possession of the premises as tenant of the heirs of the mortgagor, Miller. He entered as such in March, 1863, under an express parol lease made with Robinson, a husband of one of Miller's daughters, paying rent to Robinson and the other sons-in-law; and whether a new lease was made with Dowling, another of the sons-in-law, for the year 1864, or not, his relation is established in law as tenant by his holding over after the expiration of his first year, and he cannot be permitted now to disclaim it. How far then does this relation impair the right of Mattis to take an assignment of the mortgage and assert it against his lessors while the tenancy exists? It is an old and familiar rule of law that the tenant shall not be allowed to question the title of his landlord. At common law this estoppel did not exist unless the lease were by deed indented, when it arose from the indenture and not from the tenancy.—*Lit. Sect.* 58; *Co. Lit.*, 47 *b.* But in this country the rule prevails as a part of the law of landlord and tenant, whether the tenancy be created by indentures or otherwise, being founded on equitable rather than on legal grounds. The policy of the law will not allow a tenant to be guilty of a breach of good faith, in denying a title, by acknowledging and acting under which he originally obtained, and has been permitted to hold possession of the premises. The lessee obtaining possession under a lease is estopped from keeping the land in violation of the agreement under which it was acquired. The result of allowing a tenant to deny the title of his landlord is well illustrated in 2 *Smith's Leading Cases, p.* 657 : "It is well known that a recovery cannot be had in ejectment, without proof of title, and that it may be defeated, by proving an outstanding title in a third person. For a tenant, therefore, to be permitted to question or contest his landlord's title in an action of ejectment for the land,

would be to take the estate from the latter, and confer it on the former, whenever there was a defect, either in the title itself or the proof brought forward to sustain it. This would obviously be equally inconsistent with public policy and private faith, and would prevent men from letting their property, even when they were unable to use it themselves." Good faith requires that the tenant shall not avail himself of the advantage given by his possession as against his landlord.

Before assailing his landlord's title, he must put him in as good position as he was before the tenancy, by delivering up to him the possession.

There are numerous instances, however, where the tenant has been allowed to question his landlord's title, but an examination of the cases will show that they are reconcilable with the reason and policy of the rule, laid down above. Thus if the tenant has been evicted in an action of ejectment, or yields to such a judgment without actual eviction, he may take a new lease from the plaintiff in ejectment, and thereupon resist the claim of the first lessor, provided he had notice of the pendency of such ejectment suit.—*Foster* v. *Morris*, 3 *A. K. Marshall*, 609. Or if a tenant of a mortgagor, he may show that the mortgagee has gained possession, and given the lessee notice to pay him the rent.—*Jones* v. *Clark*, 20 *Johns.* 51. Or that he yielded to a mortgagee claiming under a mortgage prior to his lease, and paid him rent.—*Kimball* v. *Lockwood*, 6 *R. I.* 138. By these cases it will be seen that where the tenant has been evicted, or to protect his possession as against him who has a paramount title, he will be permitted to dispute his lessor's title. Without reviewing more of the numerous authorities on this point, I may cite *Washburn*, who, in his work on *Real Property*, states the law, in my opinion correctly. The result of the numerous cases may, perhaps be summed up in the proposition, that whenever there is a paramount

MATTIS v. ROBINSON.

title in a third person, who has a right thereby to the possession of the premises, and it can be done *without any collusion*, or bad faith to the lessor the tenant, in order to *prevent being expelled* by the holder of that title, to whom otherwise he would be rendering himself liable as a trespasser, the tenant may yield the possession and attorn to or take from such holder of the title a new lease, or he may abandon possession. In either case, he will not thereafter be liable to pay rent to the original lessor, and may resist the first lessor's claim to recover possession, by virtue of the new right thereby acquired. But it seems that he ought, in all these cases, to give notice to the lessor of his abandoning or holding adverse possession, that he may not take advantage of the confidence reposed in him by the lessor in putting him into possession of the estate, to deprive him of any rights which the lessor had thereby yielded to his keeping. If, therefore, he were to purchase a better title than that of his landlord, he ought, nevertheless, to surrender possession to his lessor before he seeks to avail himself of his new title against his landlord.—1 *Wash. Real Prop.* 361; *Browser* v. *Browser*, 10 *Humph.* 49 ; *Lawrence* v. *Miller*, 1 *Sandf.* 516.

Mattis having by notice advised his lessors of the purchase of the mortgage by him, and disclaimed holding any longer as their tenant, it is claimed by his counsel that the tenancy thereby ceased, and he was at liberty to assert his mortgage against them without delivering up possession of the premises. In support of this the case of *Pierce* v. *Brown*, 24 *Vt.* 165 is relied upon. It is true that that case goes to the full extent claimed. The court there says in a case where the facts are quite similar to those in the case under consideration here, " We have no doubt that if the plaintiff first entered into possession of these premises under the mortgagor, as his tenant, still, he may repudiate the tenancy by purchasing the mortgage as being an older

and better title, and protect himself in his possession of the premises, from any claims of his former landlord. And whenever by purchasing such title he is entitled to the right of possession, it would be an idle ceremony to require the tenant to surrender up his property, and then resort to his action of ejectment, when its only effect can be, to put the plaintiff in the same situation he now occupies."

I concede that when in good faith the purchase is made to protect the lessee in his possession as against the mortgagee, he may purchase the mortgage and allege it against his lessors; but to the extent that a tenant should be warranted like any third person in buying in titles, without surrendering possession of the lands, asserting them against his landlord, I must dissent from that case. It is in violation of the policy of the law and not sustained by the authorities. In support of its conclusion the Court in that case cite that of *Greene* v. *Munson*, 9 *Vt. R.* 37, where it is laid down that "where the tenant notifies his landlord that he shall no longer hold under him, the relation ceases. The possession has become adverse, and the statute of limitations begins to run." This may be true, but still not warrant the conclusion announced above. The tenant by such notice has committed such dissension as to warrant the lessor to treat him as a trespasser, if he so elect.—3 *Peters*, 49. For the purpose of fixing the period from which the statute of limitations would run, such holding has been regarded as adverse. But for other purposes the principle of repudiating a tenancy without first surrendering possession, does not apply. One party cannot of his own volition terminate a contract while he continues in the use and occupation of that for which he promised to make compensation. Mattis having purchased the mortgage while he was in as a tenant, it must be presumed he did it for the only purpose permitted by the law to protect his possession.

What he may have paid for the mortgage (when the

MATTIS *v.* ROBINSON.

amount does not exceed what was justly due thereon) with lawful interest thereon should only be allowed him. The court below erred, therefore, in allowing Mattis to allege the mortgage against his lessors for its face and the exhorbitant rate of sixty per cent. interest while he purchased it at the legal rate, ten per cent.

An account should have been taken and the rents allowed down to the time of the sale of the mortgaged premises.

For these reasons the decree should be reversed and the case remitted to the court below, and a new decree entered in accordance with the views expressed above.