LOUIS SCHIELDS ET UX. V. JOHN A. HORBACH.

FILED OCTOBER 6, 1896. No. 6777.

1. **Deeds: WITNESSES.** Conveyances of real estate executed within this state, conveying real estate situate within this state, are required to be witnessed. (Compiled Statutes, ch. 73, sec. 1.)

2. ———: **FOREIGN ACKNOWLEDGMENT: EVIDENCE.** A deed for lands situate in this state, executed in the state of Kansas and acknowledged there before a notary public, who attached his official seal to the certificate of acknowledgment, is presumed to have been executed in accordance with the laws of the state of Kansas, and, though not witnessed, is entitled to be recorded and read in evidence in this state without other proof that the grantors therein actually executed and delivered the deed.

3. **Landlord and Tenant: ADVERSE POSSESSION.** A tenant by simply "holding over" after the expiration of his lease does not hold adversely. Until he surrenders possession of the leased premises, or by some unequivocal act notifies the landlord that he no longer holds under the lease, he cannot claim that his possession is .adverse.

4. **Trial: EVIDENCE.** A court is not obliged to submit to a jury for its consideration evidence not applicable. to any issue made by the pleadings in the case.

5. **Landlord and Tenant: ORAL CONTRACT TO PURCHASE: POSSESSION.** Where a tenant in possession orally contracts for the purchase of the. leased premises, his subsequent ' possession will be presumed to be under the lease, unless it be clearly shown that he holds under the contract of purchase. (*Bigler v. Baker*, 40 Neb., 325.)

6. **Homestead: CONVEYANCE.** Prior to the enactment of the homestead

law of 1877 the failure of the wife to join in a conveyance of the homestead, the title to the same being in the husband, did not render such conveyance void.

ERROR from the district court of Douglas county. Tried below before Scott, J.

*John P. Breen*, for plaintiffs in error.

*Lake, Hamilton & Maxwell, contra.*

RAGAN, C.

This is an action of ejectment brought in the district court of Douglas county by John A. Horbach against Louis Schields. At her request Dorothy Schields, wife of Louis Schields, was made a party defendant to the action. At the close of the evidence the jury, in obedience to an instruction of the court, returned a verdict in favor of Horbach, upon which judgment was rendered, to reverse which Schields and wife prosecute to this court petitions in error.

One link in Horbach's chain of title was a deed from one Griffith. This deed was executed in the state of Kansas and acknowledged there before a notary public, who attached his seal of office to the certificate of acknowledgment. The deed was not witnessed, and it is now insisted that the court erred in permitting this deed to be read in evidence because it was not witnessed. Conveyances of real estate situate within this state, executed in this state, are required to be witnessed (Compiled Statutes, ch. 73, sec. 1); and it is provided by sections 4 and 5 of said chapter that (section 4) a deed, "if executed and acknowledged or proved in any other state, territory, or district of the United States, it must be executed and acknowledged or proved either according to the laws of such state, territory, or district, or in accordance with the law of this state, and such acknowledgment shall be made before and certified by any officer authorized by the laws of such state, territory, or district to take and cer-

tify acknowledgments, or by a commissioner of deeds appointed by the governor of this state for that ·purpose." (Section 5:) "In all cases provided for in section 4 of this chapter, (if such acknowledgment or proof is taken before a commissioner appointed by the governor of this state for that purpose, notary public or other officer using an official seal) the instrument thus acknowledged or proved shall be entitled to be recorded without further authentication." In *Hoadley v. Stephens*, 4 Neb., 431, this court, in construing said sections before the same were amended in 1887, held: "Where a deed is executed and acknowledged in another state before a commissioner of deeds of this state, a notary public or other officer using an official seal, the law presumes a compliance with the law of the place of execution and no further authentication is necessary." (*Green v. Gross*, 12 Neb., 117; *Galley v. Galley*, 14 Neb., 174; *Dorsey v. Conrad*, 49 Neb., 443.) The deed in controversy here being for lands situate in this state, and having been executed in the state of Kansas and acknowledged before a notary public· there, who attached his official seal to the certificate of acknowledgment, must be presumed to have been executed in accordance with the laws of the state of Kansas. It was therefore entitled to be recorded and to be read in evidence without other proof that the grantors therein actually executed and delivered the deed.

The court having directed a verdict in this case if the evidence in the record would sustain a finding in favor of Schields and wife, or either of them, the judgment must be reversed. To the action of Horbach, Schields and wife admitted that they were in possession of the premises sued for, and pleaded that they had been occupying said premises as their homestead since the year 1863; that in the year 1864 Horbach executed and delivered to Louis Schields a contract for the purchase of certain real estate, being a tract of three and one-fifth acres, the land sued for herein being a part thereof; that the purchase price was $1,600; that Schields made pay-

ments upon this contract at various times from its date until January, 1873, which payments amounted to very nearly the purchase price; that in January, 1873, while Louis Schields was intoxicated, Horbach fraudulently procured a surrender to him of said contract of purchase; that after Horbach fraudulently obtained possession of said contract of purchase they had continued to occupy said property as their homestead; made valuable improvements thereon under a parol agreement with Horbach that he would carry out the original contract of purchase of said premises when the purchase price should be fully paid and that they had fully paid the purchase price and made valuable improvements upon the land. But the answer of Schields and wife does not state when the alleged parol agreement with Schields was made. They further averred that their possession of the real estate sued for, since the year 1878, had been notorious and adverse to Horbach. In addition to a general denial of the allegations of this answer, Horbach, in reply thereto, pleaded former adjudication of all the matters set up in the answer and the statute of limitations.

Horbach, on the trial, introduced in evidence the pleadings and judgment in an action in which Louis Schields was plaintiff, and he, Horbach, was defendant. This suit was brought in the district court of Douglas county on the 14th of April, 1887, by Schields, against Horbach. In his petition in the action of 1887 Schields alleged that he was in possession of the said three and one-fifth acre tract of land; that he was in possession thereof by virtue of a contract of purchase existing between him and Horbach dated in November, 1863; that prior to January, 1873, he had made large payments upon the purchase price of said land and that on the 14th of January, 1873, he and Schields had a settlement and it was then found that he, Schields, was indebted to Horbach in the sum of $283.65; that on said date Horbach induced him, Schields, to surrender said contract of purchase and

to take a lease of the real estate; that he, Schields, did so
in consideration that Horbach would give him a writing
to the effect that all' money theretofore paid by him,
Schields, as rent for said real estate should be applied on
the original purchase, and when the money so paid, to-
gether with what Schields might afterwards pay, should
equal the contract price of the land; that then Horbach
would execute to him, Schields, a deed therefor; that on
the 15th of January, 1873, in pursuance of this arrange-
ment, Horbach did execute to him, Schields, a writing
to the effect "that if the sum of $1,946, being the amount
then due, with interest, should be paid, by Schields to
Horbach at a certain date, then Schields" was to acquire
of said Horbach title to said property. Schields further
alleged that he had fully paid the amount of money which
he was to pay Horbach under this contract, and that
Horbach had refused to make him a deed. He further al-
leged that Horbach had only a legal title to the real es-
tate and was threatening to take possession of the prop-
erty and lease it to other parties, and he prayed that the
contract of purchase of the land from Horbach, dated
January 15, 1873, might be decreed in full force and ef-
fect and valid and that Horbach might be enjoined from
taking possession of any part of said property. To this
petition Horbach answered that on the 1st of January,
1864, Schields had entered into possession of the premises
under a lease for a term of three years and had built a
small dwelling house on a portion of the land; that there
was afterwards an agreement entered into between him-
self and Schields, in and by which Schields had the op-
tion of purchasing the leased premises on October 1,
1864, on condition that he paid a certain sum of money
for the land by that date, but he denied that Schields
had ever made payment as promised, in whole or in part.
Horbach further alleged that on the 14th of January,
1873, he had a settlement with Schields; that such settle-
ment was voluntary and was full and complete between
the parties, and that in the settlement all prior leases

and agreements of every kind relating to this land were surrendered by Schields and he then and there took a lease for the premises from Horbach for one year; that in the settlement there was found to be due him, Horbach, from Schields, $385.65, for which sum Schields executed his note due in one day after date, with interest. Horbach further alleged in his answer that on the 15th of January, 1873, he made to Schields a written proposition in and by which he gave him the option to purchase the premises on the express condition that he would pay up his note of $385.65, with interest, in six months from that date, and should pay during the year 1873, an additional sum of half the price named in said option, and pay the taxes on said real estate; but he averred that Schields had never accepted such proposition to purchase said real estate by the payment of any part of said note or interest within the time required or by paying any part of the purchase price fixed on said land at any time. Schields' reply was a general denial. On the trial of this case, in 1887, the district court found the issues in favor of Horbach and dismissed Schields' petition, and from this judgment he prosecuted to this court a petition in error, and the judgment of the district court was affirmed in *Schields v. Horbach*, 30 Neb., 536. It will thus be seen that Schields claimed in his action of 1887 that he was in possession of the premises sued for in this case under and by virtue of a contract of purchase of the same made between him and Horbach; while Horbach claimed that Schields was in possession as tenant, and the judgment pronounced in the action of 1887 is conclusive evidence that Schields was in possession of the property in controversy here as tenant of Horbach as late, at least, as the 14th of April, 1887. But it is to be observed that Schields and wife now allege in their answer that the settlement of January, 1873, and the surrender at that time of the contract of purchase held by Schields, which contract had been given to him in 1864, were all procured by fraud, and they now claim that they have been in pos-

session under the original contract of 1864 since that time.

It is to be said of this defense of Schields and wife that the pleadings and evidence of the suit of 1887 introduced in evidence here conclusively establish (1) that the contract of purchase of 1864 held by Schields was voluntarily surrendered by him in January, 1873, and he then entered possession of the premises as the tenant of Horbach; (2) that the option to purchase the premises given to him on that date was never accepted by him and that he never held possession of said premises under said option, but held as Horbach's tenant.

But Schields and wife allege in their answer that they have been in the notorious and adverse possession of these premises since January, 1878. As we have already observed, the pleadings and judgment of the action of 1887 put in evidence afford unimpeached and unimpeachable evidence that Schields was in possession of this property as late as the 14th of April, 1887, as tenant, and not holding possession adverse to Horbach; and the undisputed evidence in this record further shows that in January, 1878, Schields leased the property in controversy here from Horbach for three years, or until January 1, 1881. He seems to have been holding over under that lease since January 1, 1881, until the bringing of this suit, October 17, 1891; but as he took possession as tenant of Horbach, his simply holding over after the expiration of his lease, without more, will not have the effect of making him hold adversely to his landlord; until he surrendered possession of the premises under his lease, or by some unequivocal act notified Horbach that he no longer held possession of the premises under the lease, but claimed possession adverse to him, he was not holding adversely. In *Mattis v. Robinson*, 1 Neb., 3, it was held that before a tenant could be permitted to assail his landlord's title he must surrender the possession acquired under his lease. (*Thrall v. Omaha Hotel Co.*, 5 Neb., 295.) In *Lausman v. Drahos*, 10 Neb., 172, it was held

that a tenant in possession under a lease could not purchase the premises at a judicial sale and assert the title acquired thereby adverse to his landlord without first surrendering his lease or notifying his landlord that he claimed adversely by virtue of the title acquired at the judicial sale. In any view, then, that we may take of the evidence, it shows beyond dispute that as late as April 14, 1887, Schields' possession of the premises in controversy was not a possession adverse to that of Horbach. (See, also, *Johnson v. Butt*, 46 Neb., 220.)

It is also insisted that the judgment must be reversed because on the trial of this action Horbach testified that in October, 1879, he notified Schields to come in and pay his rent, and at that time he told him if he would move the house he was then occupying on the premises to another part thereof,—to that part of the premises embraced in this suit,—put it on a brick foundation, put it in a tenantable condition, and, when the house was thus repaired, pay him, Horbach, the amount which he, Schields, owed him, that when he laid the three and one-fifth acre tract of land out into lots he would deed the property in controversy to his, Schields', wife; that Schields moved the house and put it on the real estate in controversy here, but that he never accepted the proposition made him by paying the amount due. To this argument it is to be answered, first, that no such issue as this was made by the pleadings in the case under consideration, and in the absence of such an issue, had the court been trying the case himself, he was not bound to consider this evidence; and as the case was tried to a jury, the court was not obliged to submit to the jury for their consideration the evidence not applicable to any issue in the case.

But this testimony only amounts to this: That in October, 1879, Schields was in possession of the premises as Horbach's tenant, and Horbach made a verbal promise to convey him the premises upon certain conditions, with which he, Schields, never complied. The making of the

proposition by Horbach to Schields did not change the relation existing between the parties, did not make Schields any the less the tenant of Horbach, nor did not make his possession of the property adverse to Horbach, and after he had moved the house and gone into possession thereof, he was not occupying it under the proposition that he might purchase it, but occupying it as Horbach's tenant. This very point was decided in *Bigler v. Baker*, 40 Neb., 325, where the court said: "It is a well established rule that where one is in possession as tenant at the time he contracts for the purchase of the demised premises, his subsequent possession will be presumed to be under the lease, unless it be clearly shown to result from the subsequent agreement." But this case is cited by counsel for Schields and wife as an authority for their contention that the evidence quoted above shows that Schields and his wife, in October, 1879, began occupying the premises under a parol contract of purchase; but the case is not authority for the contention of counsel. In that case the occupant of the land took possession of the land under a parol agreement for the purchase of the same. Here Schields was already in possession as tenant, and the relation of landlord and tenant continued to exist, notwithstanding that he had an option to purchase.

Another argument made here for a reversal of the judgment is that Dorothy Schields, the wife of Louis Schields, has been actually occupying the premises sued for, with her family and husband, since 1864; that she was not a party to the settlement made between Horbach and Schields in January, 1873, whereby Schields surrendered the contract of purchase that he held for the land and became Horbach's tenant for the same, and that, therefore, notwithstanding the surrender of the contract of purchase, her homestead rights in the premises were not thereby affected. But a contract with reference to a homestead is to be governed by the law in force on the subject of homesteads at the date of such contract. (*McHugh v. Smiley*, 17 Neb., 620.) So much of the home-

stead law of this state as is applicable to this case, in force in January, 1873, is as follows: "A homestead consisting of any quantity of land, not exceeding one hundred and sixty acres, and the dwelling-house thereon and its appurtenances, to be selected by the owner thereof, and not included in any incorporated city or village, or instead thereof be, at the option of the owner, a quantity of contiguous land, not exceeding two lots, being within an incorporated town, city, or village  *  *  *  owned and occupied by any resident of the state being the head of a family, shall not be subject to attachment, levy, or sale, upon execution or other process issuing out of any court in this state, so long as the same shall be owned and occupied by the debtor as such homestead." (General Statutes, 1873, p. 616, sec. 525.)  Construing this statute, this court, in *Rector v. Rotton*, 3 Neb., 171, said: "The legislature never intended by this statute to assume a guardianship over the owner of a homestead and render him disqualified to make valid contracts respecting it. It imposes no restraint upon him whatever in this respect. Even the wife, when the title is in the husband, has no power to prevent him from making such disposition of it as he may think best.  It is true that in some states it is otherwise, and the wife is required to give her written assent before the husband can alienate or in any manner deprive the family of the benefit of the homestead when once acquired.  But in this state the legislature has not as yet thought proper to invest the wife with any such authority over the property of the husband." (*State Bank of Nebraska v. Carson*, 4 Neb., 498.)  Whatever might be our opinion of the question under consideration as an original proposition, the decision just quoted from has become a rule of property and we cannot disturb it, and we must accordingly hold that prior to the enactment of the homestead law of 1877 the failure of the wife to join in a conveyance of the homestead where the title to the same was in the husband did not render such conveyance void.  It is probable that this construction of the home-

stead law of 1866 led the legislature in 1877 to provide that a conveyance of the homestead, to be valid, must be executed by both husband and wife. The judgment of the district court is

AFFIRMED.