HARRY GILLILAND ET AL., APPELLEES, v. THE COUNTY OF FRONTIER ET AL., APPELLEES, ELMO L. NEIMAN ET AL., APPELLANTS.

28 N. W. 2d 448

Filed July 11, 1947. No. 32229.

*Morrison & Hanson,* for appellants.

*Colfer, Russell & Colfer* and *F. J. Schroeder,* for appellees.

Heard before SIMMONS, C. J., PAINE, MESSMORE, YEAGER, CHAPPELL, and WENKE, JJ.

SIMMONS, C. J.

Plaintiff Harry Gilliland is the owner and plaintiffs are the occupiers of 240 acres in Frontier County. There are two groups of defendants: The county and the county commissioners, and defendants Neiman. Defendant Elmo L. Neiman is the owner and defendants Neiman are the occupiers of 640 acres of land lying to the south and east of plaintiffs' land. The suit involves the question of a roadway across plaintiffs' land. Plaintiffs sought a decree enjoining the defendants Neiman from trespassing upon their lands and enjoining the defendant county from going upon the lands for the purpose of locating or constructing a public road thereon, and from interfering with plaintiffs' possession of the land.

Defendants Neiman answered alleging that the road involved was a public highway, setting out establishment by adverse user and by proceedings of the county commissioners had in 1908. They further alleged that the road had not been vacated and that plaintiffs attempted to close it in September 1945. Defendants sought a denial of plaintiffs' petition and equitable relief.

Defendant county answered making certain admissions and denying generally.

During the progress of the trial the court and attorneys viewed the premises. The court found generally for the plaintiffs and enjoined the defendants and each of them from trespassing upon the plaintiffs' lands. The Neimans appeal. The county makes no appearance here.

The error assigned is that the pleadings and evidence do not support the findings and judgment of the trial court. We affirm the judgment of the trial court.

The land in the northeast corner of plaintiffs' quarter is bisected by ravines running east and west and across the section line. It appears that for many years last past defendants Neiman and others have used a roadway across plaintiffs' land which went around the ravines. The road was meandering and unimproved, and went through gates which were in the fences on the east and north of plaintiffs' land. It appears that defendants Neiman desired a better outlet to the north and sought advice about opening a road. They were informed that there was a road which had been opened in 1908. The county surveyor on instructions from the commissioners, undertook to locate the 1908 road and surveyed a road lying to the south and west of the existing road. There is evidence that some work was undertaken on this road following the survey. Plaintiffs wired shut the gates. Defendants opened them and controversy arose, resulting in this litigation.

The first matters to be determined are questions of fact. Several exhibits were used. Throughout the trial witnesses were asked questions and gave answers with reference to unidentified exhibits and as to what they saw or knew existed here and there and of roads that went this way and that way. This evidence is unintelligible to us. It may have been clear to the trial court. Just as we give weight to his viewing of the premises, so this evidence gives weight to his conclusions.

We undertake to summarize the evidence that can be pinned down with reasonable certainty. For purposes of clarity we have prepared a chart showing the approximate location of the land and the various roads about which testimony was given. The chart is not an exact reproduction of any exhibit. It is used solely to enable a clearer understanding of the fact statements and the conclusions which we make.

Plaintiffs' land consists of 240 acres as indicated in section 12. Title was acquired in 1916 and 1917. Defendants Neiman's land is 640 acres in sections 7 and 18. Title was acquired in the last two or three years.

The road which the county surveyor surveyed in 1946 is shown as F to C.

Before the county undertook to locate and establish public roads in this area by statutory proceedings in 1908, there were traveled roads in existence. They were usable roads, bearing in mind the conditions, development, and requirements that existed in western Nebraska half a century ago. There is substantial evidence that one of these roads came from the south, following natural levels of the land, running north from F to E and into section 6, and thence north still along natural levels east of the range line and at least as far as the north line of section 6. So far as dates are concerned this appears to have been the earlier of the roads. There also is shown to have been a series of trails from E to D to C, which meandered around the ends of the ravines, and which were in use in the early 1900's. One disinterested witness testified that when they wanted to go north from section 7, they used the road F to E and north across section 6, and that when they wanted to go west they used the road E to D to C.

On January 15, 1908, a petition was filed with the county commissioners asking for the establishment of a public road beginning at the southeast corner of section 19, thence one mile west, thence north four miles on the range line to intersection public road No. 389. The notice of opening this road shows its location more in detail and through pockets and canyons and around bluffs. It went across section and range lines and finally followed around a bluff "as road is now traveled back to the range line at a point near the southwest corner of the northwest quarter of section 7, * * * thence north as near as practicable on range line and as road is now worked and traveled to or near the northeast corner

of section 1, * * * and terminating at this point entersecting (sic) road No. 389 * * *." The same description was used in the appointment of appraisers and in the report of commissioner appointed to view and examine into the expediency of establishing the road. The commissioner attached a plat of the road and made it a part of his report. It shows the road going north along the line G to F to E to A, and east of the range line from the southwest corner of the northwest quarter of section 7.

On August 21, 1908, the county commissioners ordered the road opened and worked following the above recited description in their order. This road is locally known as the Wheeler road and as road No. 520.

Also on June 17, 1908, the county commissioners ordered opened and worked as a public road the road (known as the Mads Larsen road, or road No. 505) H to C to B to A, describing B to A as "in a northerly direction as road is now traveled to the northeast corner of section 1 * * * and terminating at this point on public road #389." This shows that at that time there was a traveled road from B to A which was entered by the new road C to B.

Of interest is a statement found in the report of the appraisers of damages on the establishment of the Wheeler road. To the owner of the northwest quarter of section 6, they recommended damages with this proviso: "But should the road petition known as the Mads Larson by. (sic) granted then this party should have no damage, as this is on the same route on this piece of land." The county commissioners rejected this claim "owing to prior establishment of Larson Road over same route."

There also is in evidence a township road plat showing road 505 running from H to C to B to A with the road B to A having a slight curve and running east of the range line in section 6. It shows road 520 following the line F to E to B and terminating at B. The

road E to D to C is not shown on this plat. The date of the preparation of this plat is not shown.

There also is in evidence a plat of section 1 made by the county surveyor in March 1911, apparently to locate the corners of section 1. Among other things this shows road 505 along the line west of C, road 520 entering from the south at C, and 505 and 520 running from C to B to A. Road 520 is not shown south of point C, except for a short distance. This is the first time road CD appears on any of the maps.

We conclude that the Wheeler road or road 520 as established by the county commissioners in 1908 did not follow the course either along FDC to B or EDC to B, and that the defendants have no rights to a roadway across section 12 by virtue of those proceedings. We mention some of our reasons. Deviations from the range line of a less degree were noted and platted in other sections of the road. There was an existing traveled road generally along the range line from F to A and some evidence that it had been worked. There is no evidence that road EDC was ever a "worked" road. It was merely a meandering trail or series of trails across the open prairie at that time. The land in section 12 (here involved) is not mentioned in the description of the road; no service of notice of opening is shown to have been made upon the then owner of the land. He is not shown to have waived damages or claimed damages. The Larsen road opened about the same time, makes no reference to a road from C to D to E, or C to D to F. The two petitions when taken together show that the road B to A was the common route of both roads. The showing of a common route B to A tends strongly to negative a common route of C to B.

We think it reasonable to conclude, as did the county surveyor, that after the Larsen road was opened to travel, the traffic on the Wheeler road found it easier to take the trails E to D to C, and thereafter did so.

We should here mention the road F to D which the

surveyor marked out in 1946. He testified as to finding some evidences of a road for a short distance northwest of F. He said it was a meandering road. He did not follow it to D but laid out a road in a straight line from F to D. Clearly the defendants have established no preexisting road along that line.

There remains to be determined what rights, if any, the defendants have to a road along the route E to D to C. As we have pointed out, there was a trail or series of trails along this route as early as 1903 or 1904. There never was a worked road, but the trail or trails meandered around the head of the ravines across the prairie. The land was open and unfenced until 1918. Some of it to the west was plowed land and the evidence indicates that the road had no fixed course.

The plaintiff owner acquired the land in 1916 and 1917. He fenced it in 1918 and there were gates at C and at E. Thereafter these gates were kept closed, in particular during the several months of each year when stock was kept there. The relatively few people who found occasion to use the road did so, opening and closing the gates. It was a community, neighborly arrangement such as existed in many sections of Nebraska. From 1918 to 1945, no one protested or questioned plaintiffs' right to enclose the road and to maintain the gates.

Defendants contend that the public has acquired a roadway across plaintiffs' land by prescription. In Engle v. Hunt, 50 Neb. 358, 69 N. W. 970, we held: "To establish a highway by prescription there must be a user by the general public under a claim of right, and which is adverse to the occupancy of the owner of the land, of some particular or defined way or track, uninterruptedly, without substantial change, for a period of time necessary to bar an action to recover the land."

In Smith v. Nofsinger, 86 Neb. 834, 126 N. W. 659, we said: "Mere willingness to accommodate school children, a neighbor, or the public ought not to be made

the basis for a decree wresting from the individual his property rights."

In Burke v. Diers, 102 Neb. 721, 169 N. W. 263, we said: "Another important, sometimes made a controlling, fact in determining either adverse user by the public under claim of right, or intent to dedicate, is whether the public authorities have ever assumed control of the road or repaired it. If so, it is evidence either of adverse user or of intent to dedicate, or both. Here the public authorities never attempted to establish, control, or repair the road. * * * Oftentimes farmers or owners of city lots, out of mere generosity and neighborly feeling, permit a way over their land to be used, when the entire community knows that the use is permissive only, without thought of dedication or adverse user. This use ought not to deprive the owner of his property, however long continued. Such rule would be a prohibition of all neighborhood accommodations in the way of travel. * * * Where the public has exercised no control or dominion over the road, nor used it to such an extent as to inform the owner, exercising reasonable care for his rights, that the public is using it under claim of right, then neither implied dedication nor adverse user is shown."

In Stalder v. Miles, 108 Neb. 386, 187 N. W. 854, we said: "Mere acquiescence or permission to use the road does not operate to deprive the owner of his property."

The evidence here is insufficient to sustain a prescriptive right to the use of a way across plaintiffs' land.

The judgment of the district court is affirmed.

AFFIRMED.