CATHERINE A. WALSH, APPELLANT, V. JOHN R. WALSH ET AL., APPELLEES, IMPLEADED WITH CALVIN R. MCCOY ET AL., INTERVENERS-APPELLEES.

58 N. W. 2d 337

Filed May 8, 1953. No. 33288.

*Chambers, Holland & Groth,* for appellant.

*Sterling F. Mutz,* for interveners-appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CARTER, J.

This is a suit for an injunction brought by Catherine A. Walsh, plaintiff, against John R. Walsh and William V. Walsh, defendants, praying that the defendants be perpetually enjoined from depriving plaintiff of the use of a road situated on the east side of the west half of Section 34, Township 8, Range 9, in Otoe County, Nebraska. Calvin R. McCoy and Katie R. McCoy intervened in the suit, alleging that they acquired title to the land involved which formerly belonged to John R. Walsh, and praying for an order quieting title in them and enjoining plaintiff from trespassing upon or claiming any right, title, or interest in such land. The trial court found for the interveners and against the plaintiff and defendants, and entered a decree quieting the title to the real estate brought into question in interveners, free from all claims of the plaintiff and defendants. The plaintiff appeals.

The record shows that Thomas B. Walsh was the owner of the northeast quarter, the southwest quarter, and south half of the northwest quarter, all in Section 34, Township 8, Range 9 East of the 6th P. M., in Otoe County, Nebraska, at the time of his death. The land was devised to his ten children to be divided equally among them. Five of the children sold and conveyed their interests in the real estate to the other five children. The latter group included the plaintiff and the two defendants. By a partition deed plaintiff became the owner of the south half of the northeast quarter and John R. Walsh became the owner of the south half of the northwest quarter. No reservations were made with reference to the road that brought about this liti-

gation. The partition deed was executed on February 28, 1924. As to the south half of the northwest quarter, which was conveyed to John R. Walsh, the plaintiff was one of the grantors. It will be observed, also, that the west line of plaintiff's land was the east line of the John R. Walsh land. On March 7, 1944, John R. Walsh sold and conveyed his land to interveners McCoy. This deed contained no reservation of a road, nor the grant of an easement. The defendant William V. Walsh owned the east 80 acres immediately south of the McCoys. He appears to have no interest in this litigation.

The evidence shows that this action was commenced on January 27, 1944, before the McCoys became the owners of the land. A restraining order was issued which was kept in force until the case was heard on the merits by virtue of a stipulation of the parties to that effect made in open court. The interveners McCoy were not parties to the suit when it was originally filed. They assert that they never heard of the suit until 1950. The abstract of title failed to disclose the pendency of the suit.

It is the contention of the plaintiff that for many years she has used a road from the north along the quarter section line as a means of ingress and egress to the building on her 80 acres. The road follows the north and south quarter section line very closely until it reaches a point about 600 feet north of the south boundary of the McCoy land. At that point it follows an irregular course, veering onto the McCoy land as much as 73 feet. The plaintiff claims to be the owner of this road and the land between it and her 80 acres.

The record shows that the old family home of Thomas B. Walsh was located on the line of these two 80-acre tracts. In fact the old house which burned more than 20 years ago extended over onto the McCoy land. An old cave is shown to exist on what is now the McCoy land. The barn, a corn crib, and what is described as a shed, are located on plaintiff's land. It is quite evident that when

the two tracts were under common ownership the farm yard extended onto the McCoy land to some extent. A row of mulberry trees in a north and south line approximately 45 feet over on the McCoy land are still evident and indicate the boundaries of an orchard that once existed. The road in question passes to the west of these trees and constitutes the point of maximum encroachment upon the McCoy land.

The evidence shows that the road north had been used for more than 50 years as a roadway into the old farm improvements. The road out to the east has not been used since automobiles and trucks became a common mode of transportation, because of a slough running through plaintiff's land. The road to the south is open but rough and unusable for all practicable purposes. The disputed road is not one of necessity, as plaintiff can get out to the north on her own land. John R. Walsh, the former owner of the McCoy land, testifies that he grubbed out the orchard on the disputed land when he obtained title. He testifies, also, that he took a part off the old house and moved it onto the disputed ground by permission from plaintiff, and that he paid all expenses in connection therewith. The McCoys testify that this shack was not occupied from the time they purchased the land until the time of the trial and that their tenant used it in which to store hay for cattle. This evidence is disputed by plaintiff, but the evidence of use by her is very fragmentary. The evidence of John R. Walsh is that all the family were to use the road and that it was understood and agreed that all members of the family, including the plaintiff, could use it. Parts of the evidence of plaintiff and interveners are uncorroborated and in irreconcilable conflict. Under such circumstances we invoke the rule that in an equity case tried de novo on appeal we will consider the fact that the trial judge saw and heard the witnesses and believed one version of the facts rather than the other. Killip v. Killip, *ante* p. 573, 57 N. W. 2d 147.

We think the trial court was correct in construing the evidence of plaintiff and John R. Walsh, the former owner, with regard to the use of the road to the north as being a permissive use. Plaintiff testifed: "Q He consented that you use that when you needed to while you and he were on the adjacent properties, didn't he? A We agreed when we made the deal that we would use the north road— Q Wait a minute! Didn't he consent to let you use that as long as you wanted to as long as he owned it? A Why, sure he consented; he never stopped me." The language in Bone v. James, 82 Neb. 442, 118 N. W. 83, is particularly applicable to the situation presented. We there said: "It is quite apparent from the whole testimony that the use of this road or way was commenced and continued by Meredith under license or permission from the plaintiff, and that no claim of right was ever asserted until made by the defendant a short time prior to commencement of this action. As stated in Atchison, T. & S. F. R. Co. v. Conlon, 62 Kan. 416, 53 L. R. A. 781: 'Mere use under a naked license, however long continued, cannot ripen into a prescriptive right.'" There is no evidence in this record that plaintiff ever repudiated the verbal understanding had with John R. Walsh, or asserted a claim of title thereto until after the McCoys bought the John R. Walsh land on March 7, 1944. It is plain that the 10-year period has not expired in order to give plaintiff a prescriptive interest in the road since that date. Consequently, plaintiff has not acquired a prescriptive right to the property involved in this litigation.

An interest in real estate may be obtained in the land of another by open, notorious, peaceable, uninterrupted, adverse possession for the statutory period of 10 years. But where it appears that such possession was permissive until a date which excludes any possibility of the running of the statutory period of 10 years, no easement or other interest therein can be obtained by prescription. Such proof destroys any presumption

that the possession was adverse for the statutory period. No such presumption can exist for another reason. As a former grantor, who claims to have remained in possession after a conveyance of the property, she subjects herself to the rule that after such conveyance and retention of possession her possession is presumed to be permissive and subject to the rights of the grantee, and in such case the possession cannot be adverse until notice of the adverse claim is brought home to the other party. Schields v. Horbach, 49 Neb. 262, 68 N. W. 524; Ross v. McManigal, 61 Neb. 90, 84 N. W. 610; Walter v. Walter, 117 Neb. 671, 222 N. W. 49; Gramann v. Beatty, 134 Neb. 568, 279 N. W. 204. We submit that any view of the evidence reveals that as late as March 7, 1944, plaintiff's possession of the lands in controversy was not adverse to John R. Walsh, nor to the interveners McCoy, the grantees of John R. Walsh. The decree of the district court must, therefore, be affirmed.

AFFIRMED.