MAUD HOPKINS, APPELLANT, V. WILLIAM HILL, APPELLEE.

68 N. W. 2d 678

Filed March 4, 1955. No. 33635.

*Schroeder & Schroeder*, for appellant.

*William S. Padley*, for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

MESSMORE, J.

 The plaintiff Maud Hopkins brought this action in the district court for Frontier County against William Hill, defendant, to enjoin the defendant from going on or over a strip of ground in the southeast quarter of Section 24, Township 7 North, Range 26 West of the 6th P. M., in Frontier County, owned by the plaintiff. The trial court rendered judgment in favor of the defendant and dismissed the plaintiff's petition. The plaintiff filed a motion for new trial which was overruled. From the overruling of the motion for new trial, the plaintiff perfected appeal to this court.

We will hereinafter refer to the parties as they were designated in the district court.

The record discloses that prior to 1906 Heber Boyle became the owner of the north half of the southwest quarter of Section 24, Township 7 North, Range 26 West of the 6th P. M., in Frontier County. In 1906 he moved to Farnam, Nebraska, and rented this land. About January 1, 1919, Heber Boyle and his brother George Boyle purchased the west half of the east half, and the east half of the west half, of Section 25, Township 7 North, Range 26 West, in Frontier County, Nebraska. Heber Boyle married Stella Boyle in 1918, and they lived in Farnam until 1947 when they moved to Gothenburg. Heber Boyle died in 1948, and Stella Boyle, his widow, became a life tenant of the land in Section 24 as above described. George Boyle died prior to 1942 and left the land in Section 25 as above described to his heirs who sold it to Stella Boyle on February 24, 1943. At the time of the commencement of this action she was the life tenant of all this land, having conveyed certain parts thereof to her children Harold, Dale, and Maxine, reserving a life estate to herself.

The record also discloses that Maud Hopkins is the owner and in possession of the southeast quarter of Section 24, Township 7 North, Range 26, and the west half of the west half of Section 19, Township 7 North, Range

25, and has been since September 18, 1947; that her husband, William Hopkins, was the owner and in possession of said southeast quarter of Section 24 from December 7, 1915 to September 18, 1947, the date of his death, and of the said west half of the west half of Section 19 from May 3, 1918 to September 18, 1947; that Maud Hopkins is the owner of the east half of the east half of Section 25, Township 7 North, Range 26, and that this property was conveyed to her husband, William Hopkins, on February 24, 1915, by warranty deed; that the tenants on the Boyle land lived on the improvements on the north half of Section 24, and in farming land in Section 25 the tenants moved their machinery and crops along the west side of a fence running north and south about 579 feet west of the east line of Section 24 to the south line of said Section 24 whereupon they went over a strip along the immediate south side of said section a distance of approximately 605 feet to the northeast corner of the Boyle land in Section 25; and that said roadway was approximately 15 feet in width. When the Hopkins purchased this land the roadway was in existence, they knew of its existence, and they continued to know of its existence and its use by the tenants of the Boyle property at all times thereafter.

From an analysis of the record, there are no other roads or means for transporting farm machinery of different types to the Boyle land in Section 25. The record shows that it would be impracticable and impossible to transport farm machinery by any other road, and the strip of road in question is the only means of ingress and egress to and from Section 24 to the Boyle land in Section 25. The evidence also discloses that from at least 1932 to the time of trial the strip of land in question had been substantially in the same condition and the same width; that it was kept up by Maud Hopkins and her sons Clifford and Leland and not by any other party or parties; that prior to 1952 there were dikes built up to the fence along this strip of land; and that in 1952 ter-

races about 18 inches in height were built up. to the fence along the said strip of land by the Hopkins. The record discloses further that the tenants on the Boyle land have used this means of transporting farm machinery of various types from Section 24 to Section 25 over this strip of land. There were no conversations with the Hopkins with reference to moving such machinery over this strip of land, and no asking of permission to do so. Apparently, such machinery and equipment have been moved over this strip of land for a period of 20 years.

The management of the Boyle land has been taken care of by Stella Boyle since 1940. Prior to the death of Heber Boyle and George Boyle they supervised the management of this land. Stella Boyle has not lived on Section 24 except during the period of the lease of William Hill. This written lease is from March 1, 1953 to March 1, 1956.

It appears from the record that the tenant Charlie Johnson lived on the Boyle land and farmed Section 25 from 1924 to 1933. He was succeeded by the tenant Milo Nickerson who farmed this land until about 1936 when Charlie Johnson returned and again became the tenant on the land from 1936 to 1942. He was succeeded by his nephew Clarence Johnson who farmed the Boyle land from 1943 until he moved off in March 1953.

Prior to 1943, Clarence Johnson lived north of the Boyle land for a period of 3 years. He testified that he had been acquainted with the roadway in question since 1938 or 1939. During the period of time that he was a tenant on the Boyle land he moved equipment such as haying equipment, drills, tractors, and a combine from Section 24 to Section 25 to attend to the farming operations in Section 25. No one ever interferred with his use of this roadway during that period of time. He did ask the consent of Hopkins to use the roadway to harvest his crop. This was after his tenancy had expired and "No Trespassing" signs were placed in the

roadway entrance. He obtained consent to do so. It is apparent that no one interferred with any other tenants' use of the road.

Phillip Johnson, the father of Clarence Johnson, testified that he had worked for Charlie Johnson at intervals from 1936 to 1942, and that he had driven farm machinery over this road without interference from any person. He further testified that the road was a well-defined road; that he could see the tracks; and that he was able to get a combine over the road without difficulty except for the dams (dikes) which he had to cross. He also assisted Clarence Johnson from 1947 to 1952 in doing farm chores. He noticed the turnrows used by the Hopkins on this road, and also the fact that terracing had been done by Leland Hopkins and was supervised by Dale Banzhaf who was in the business of terracing farm land.

Henry Derra testified that in 1947 he was a farmer and lived 6 or 8 miles distant from the Boyle land. He was a road overseer for 7 or 8 years. During that time he was in and around the Hopkins and Boyle lands. He moved into that vicinity in 1932, went across the road in question to the Boyle land, and followed this road at all times that he lived there. He went through the Boyle land to the south to a regular highway designated as the route he took to go to Stockville, Bartley, Indianola, McCook, and Curtis. This road was open at all times and was well traveled. He further testified that his neighbors who lived north, east, and west used this road; that he knew that the tenants of Boyles, Nickerson and Charlie Johnson, used the road in their farming operations; and that none of the Hopkins ever talked to him, nor were any complaints made to him in regard to using the road, and no signs prohibiting the use of the road were ever put up. From the looks of the road it was well maintained. In 1932 it was used for transportation. At that time he noticed no turnrows or dikes on the Hopkins land.

Leo Mowrey testified that he had been acquainted in the vicinity of the Boyle lands since 1938, and that he worked for Charlie Johnson in 1938 and 1939 doing chores in the winter. Charlie Johnson farmed Section 25, and he helped haul feed over the road to some cattle in Section 25. The road was in the same condition as when he worked for Charlie Johnson, the only difference being that the terraces were a little higher. Prior to that he crossed the dikes to go over the road. He had no conversation with any of the Hopkins family with reference to whether or not he could use the road as an employee of Johnson. The road was used regularly to go to Section 25 for the purpose of shucking corn, and they had cattle there and took wagons over this road. In August 1953, he took a hay baler over the road in question. At that time he was employed by William Hill, the present tenant. In doing so, he did not ask for permission. The road was in the same location as it was in 1938. He further testified that there was a turnrow on this road.

Louis Kline testified that he previously lived in the northeast quarter of Section 23 of the Boyle land where the buildings are located and had resided there from 1932 to 1948. In 1934 he tended some corn for George Boyle on Section 25. He helped thresh on occasions between such dates. He first went across the strip of land in question in 1932 when the land was broken out. The road was in the same location and condition when he went over it "last fall" as it was in 1932. He never obtained permission from the Hopkins, and no one told him that he did not have a right to go through there.

Clifford McMichael, a neighbor of the Hopkins and Boyles who lives just east of the Boyle and Hopkins' lands, examined exhibit No. 1. He testified that he had lived in the vicinity for 64 years and had known the road in question since he was 12 years of age. As far as he knew, the road had always been in the same location. He had not been over it since Nickerson was a tenant

in 1932 or 1933. He had gone over the road to do some work on a tractor for Nickerson in 1932 when he was breaking the ground in Section 25, and did not obtain permission from anyone to do so.

William Hill, the defendant, testified that the farmstead on which he lives is in the northeast half of Section 24, at the north end thereof. This is part of the Boyle land. He further testified that he took farm equipment down the road in question to Section 25, and did not ask permission to do so from any person. In August 1953, Clifford Hopkins told him to find another means of getting into Section 25, to which he replied that he had no other way to get into Section 25, and that he would continue to use this road and has continued to do so since. While it is true that Stella Boyle made a statement that consent was asked for the defendant to use the road to move his hayrack over it, this was done after this litigation was instituted. William Hill further testified that neither the terraces nor a turnrow in the road have obstructed his use of the road. He did nothing to maintain this road. He further testified that it would be impossible to get equipment from the north half of Section 24 through the southwest quarter of Section 24 into Section 25 on account of gullies and crevices which run up to the fence; that there are deep canyons and wash-outs which could not be filled in with the use of scrapers; that the hills are too steep to get farm machinery up and over them; that there is no other method by which he could get from the north half of section 24 to the farm land in Section 25 other than the road as heretofore described; and that he cannot go along the south side of Section 25 to get to his land because the road south has been closed and the bridges washed out for many years, and there has not been any travel through there.

Stella Boyle, the widow of Heber Boyle and the life tenant of the Boyle land, testified to the different tenants who occupied this land and the manner in which

she acquired it; that the roadway in question was there when the land was purchased by the Boyles in 1919 and has been there ever since; that due to the disability of her husband she had managed the land since 1940 and endeavored to get down to it at least once a year; that the tenants used the road in question to move farm machinery from Section 24 to Section 25; that she never had a conversation with the owners of the southeast quarter of Section 24 since she had anything to do with the Boyle land concerning the use of the roadway, and no agreement was made with reference thereto; that her tenants continued to use this roadway during the period of time that she was acquainted with the Boyle land; that the fact that there was a turnrow there or that terraces were there was not such as would obstruct the travel on the roadway in question; and that any of her tenants would be willing to cooperate with any of the neighbors to keep this road in condition.

Maxine Hill, the daughter of Stella Boyle and the wife of William Hill, testified that she lived with her parents in Farnam until 1938; that she had been on the Boyle land; that she and her brother had driven her father and uncle George over the road in question during the time they supervised the land, observed it at that time, and from her observation it was now in the same location that it was in 1938. She testified as to the roadway, to the effect that it would be impossible to use any other means of ingress or egress from Section 24 to Section 25; that tenants moved machinery over this road to get to Section 25; and that it had been used since the terraces had been placed across it. She also testified that due to the terraces which were about 18 inches in height the muffler of their car had been knocked off on several occasions and had to be repaired. There was a number of years that she was unacquainted with this land because of her husband's different positions at other places.

Clifford Hopkins testified for the plaintiff as to the ownership of the land in his parents and with reference

to the road in question which had been there since he could remember, he being 43 years of age; that the Hopkins maintained this road; and that the terraces were put in in 1952. He described the premises in detail and stated that on or about August 1, 1953, he met the defendant William Hill on Section 25, and told him it would be better if he could find another road to get down to Section 25, that he could not put up with the destruction which had been going on which tore down the terraces and destroyed the wheat where it was driven over. He further testified that he lived on Section 19 which is east of Section 24 and northeast of Section 25, and uses this road to get down to the Hopkins land in Section 25. In addition he described the road in question. While there is testimony by this witness that there is a road that is open by which the defendant could reach Section 25, this road, according to this witness, is not maintained.

Leland Hopkins testified that he helped farm the land with his brother Clifford; the manner in which they entered the field and how they got to Section 25 with their farming equipment from Section 19; that there was a turnrow in this road; and that the road in question is a well-defined passageway for vehicles and you can see that it has been used.

From a review of all the testimony it is apparent that there is no other means by which the defendant can get into Section 25 from his land in Section 24.

The plaintiff assigns as error that the trial court erred in rendering judgment because the same is not sustained by sufficient evidence and is contrary to law.

The plaintiff contends that a tenant may not establish an easement for his landlord without an actual entry by the landlord on the easement claim. In support of this contention the plaintiff asserts that the defendant claims the easement arose in 1932; that at no time since 1906 has a person seized in fee simple title lived on the Boyle land and the tenant occupying the land from

1932 and the tenants thereafter occupying said land had no right to start the easement running in behalf of the landlord; and that if the landlord hopes to receive the benefit of his easement he must at least have started the use of the easement himself.

The case of Deregibus v. Silberman Furniture Co. Inc., 121 Conn. 633, 186 A. 553, 105 A. L. R. 1183, is cited. The factual situation in that case is dissimilar to that of the case at bar. However, the principle announced therein lends support to the plaintiff's contention. There are cases from other jurisdictions to the same effect.

The plaintiff also cites and relies on the cases of Omaha & Florence Land & Trust Co. v. Parker, 33 Neb. 775, 51 N. W. 139, 29 Am. S. R. 506, and Cassens v. Wisner, 122 Neb. 408, 240 N. W. 526. The last-cited cases do not support the plaintiff's contention as will be shown later in the opinion.

We are not in accord with the plaintiff's contention above stated.

In the case of Dormer v. Dreith, 145 Neb. 742, 18 N. W. 2d 94, which was an action to prevent the plaintiffs from crossing a road and to quiet title in the plaintiffs to a strip of land 25 feet wide across the defendants' land, the defendants claimed that the use of a way across real estate while in possession of a lessee cannot be tacked to the use thereof while in the possession of the owner to make up the period necessary to acquire the right to the use thereof by prescription. This court held that possession of a tract of land by an agent or tenant under adverse holding inures to the benefit of the adverse holder; and that personal occupation in such a case is unnecessary, citing Lantry v. Parker, 37 Neb. 353, 55 N. W. 962. Cases from other jurisdictions were cited to the effect that on the issue of adverse possession through a tenant it is immaterial whether the leases were written or verbal. Possession through a tenant or agent is of course sufficient actual possession to support the claim of adverse possession. Tiedeman, Real

Property (3d ed.), § 493, was cited. Also cited was Cassens v. Wisner, *supra*, wherein it was said: "Appellants also cite the case of the Omaha & Florence L. & T. Co. v. Parker, 33 Neb. 775, which holds: 'To entitle a party to claim by adverse possession, he must have made an actual entry upon the land and occupied the same as owner. This occupancy, however, may be continued by his agents.' The evidence discloses that in that case the parties claiming the land actually took possession of the land themselves and then placed tenants in possession, and we do not understand that the supreme court held in that case that it would be impossible to take possession of the land in the first place by and through a tenant. * * * We hold that the weight of authority supports the doctrine that the possession of a tenant, who entered by express right of a person who claimed to be the owner of the land, is the entry and possession of such owner."

The plaintiff contends that the defendant is guilty of a trespass upon the plaintiff's land and should be enjoined from further trespass, while the defendant contends that an easement has been acquired by prescription over the road in question. The plaintiff, in support of her contention, cites Romans v. Nadler, 217 Minn. 174, 14 N. W. 2d 482; Walsh v. Walsh, 156 Neb. 867, 58 N. W. 2d 337; and Stubblefield v. Osborn, 149 Neb. 566, 31 N. W. 2d 547, to the effect that there are five essentials to adverse possession. It must be hostile and under claim of right, actual, open, continuous, and exclusive.

The plaintiff relies on evidence to the effect that the defendant and other tenants of the landlord have not used this road exclusively for the reason that there is testimony that the Hopkins used the passageway for a turnrow, had placed terraces and dikes thereon, and maintained the roadway without permission of any other person or persons; that it was not until August 1953, that the plaintiff was informed that the defendant claimed the passageway as his own or through his land-

lord; and that at no time did the plaintiff acquiesce, but brought this action to have the defendant enjoined from trespassing.

In determining a prescriptive use of a roadway, the following is applicable. In Jurgensen v. Ainscow, 155 Neb. 701, 53 N. W. 2d 196, this court said: "The use must be adverse, under a claim of right, continuous and uninterrupted, open and notorious, exclusive, with the knowledge and acquiescence of the owner of the servient tenement, and must continue for the full prescriptive period."

Where a claimant has shown open, visible, continuous, and unmolested use of land for a period of time sufficient to acquire an easement by adverse user, the use will be presumed to be under a claim of right. The owner of the servient estate, in order to avoid the acquisition of the easement by prescription, has the burden of rebutting the prescription by showing the use to be permissive. See, 17 Am. Jur., Easements, § 72, p. 981, and cases cited under note 12. See, also, Majerus v. Barton, 92 Neb. 685, 139 N. W. 208; Moll v. Hagerbaumer, 98 Neb. 555, 153 N. W. 560; Dormer v. Dreith, *supra;* Stubblefield v. Osborn, *supra;* Jurgensen v. Ainscow, *supra.*

In the instant case there is no evidence in the record with reference to the creation of this easement rebutting the presumption of a claim of right. In fact, the evidence of the plaintiff herein is to the effect that there was no permission asked, and no conversations were had at any time by either the plaintiff, her husband, or her sons who testified in her behalf, with reference to a permissive right or with reference to the use of the road in question with the owners of the Boyle land or any of the tenants of such land. In other words, there is no competent evidence appearing in the record to show the defendant's use of the claimed easement was by permission of the owners of the servient estate.

It is presumed, however, that every man knows the

condition and status of his land; and if anyone enters into open and notorious possession of an easement therein under a claim of right, the owner is charged with knowledge thereof. See 17 Am. Jur., Easements, § 65, p. 976.

Aquiescence on the part of the owner which is necessary to acquisition of a prescriptive easement means passive assent or submission, quiescence, consent by silence. See, Dartnell v. Bidwell, 115 Me. 227, 98 A. 743, 5 A. L. R. 1320; Davis v. Wilkinson, 140 Va. 672, 125 S. E. 700; Jurgensen v. Ainscow, *supra*.

If such user has been for the requisite time open, notorious, visible, uninterrupted, and undisputed under claim of right adverse to such owner, he is charged with knowledge of such user and his acquiescence in it is implied. See, 2 Thompson Real Property (Perm. Ed.), § 512, p. 94, cases under note 18, also § 510, p. 89; Hester v. Sawyers, 41 N. M. 497, 71 P. 2d 646, 112 A. L. R. 536.

The extent of an easement, however, is determined from the use actually made of the property during the running of the prescriptive period. It in fact determines the nature of the easement acquired. A trial court may determine the extent of an easement arising by prescription in an injunction action and restrain interference with rights found to exist by virtue of the finding so made. The servient owner of land subject to an easement may make such use of it as he sees fit, subject only to the right of the dominant owner of the easement to use it for the purposes out of which the right arose. See, Paloucek v. Adams, 153 Neb. 744, 45 N. W. 2d 895. See, also, 17 Am. Jur., Easements, § 59, p. 971; Dunbar v. O'Brien, 117 Neb. 245, 220 N. W. 278, 58 A. L. R. 1033.

With reference to exclusive use as referred to by the plaintiff to the effect that the defendant did not have exclusive use, it is said in Jurgensen v. Ainscow, *supra*: "The term 'exclusive use,' however, does not mean

that no one has used the driveway except the claimant of the easement. It simply means that his right to do so does not depend upon a similar right in others. See, 17 Am. Jur., Easements, § 64, p. 976; Thompson v. Bowes, 115 Me. 6, 97 A. 1, 1 A. L. R. 1365; Annotation, 111 A. L. R. pp. 223, 224."

As we view the record in the instant case, it is evident that in the matter of a claim of a prescriptive easement that there was no intention on the part of the person claiming such an easement to deprive the owner of the land of the use thereof except to the extent that the claimant maintained his right to use for the purpose of his easement. In the instant case the only time the roadway was used by the defendant or was used by his predecessors as tenants was at the time of moving machinery and equipment into Section 25 to the south of the land of the plaintiff for the purpose of planting, harvesting, and caring for crops, and then the use of said roadway for the purpose of the removal of such machinery and for the removal of crops from Section 25 south of the land of the plaintiff. This is a continuous use in that it was used every year for the same purposes, not necessarily at the identical time. The fact that the plaintiff used this road for a turnrow and the fact that she erected terraces across the roadway were not such interference as to prohibit the use on the part of the defendant or the tenants who preceded him.

In spite of the fact that the plaintiff had a turnrow on this road, it was still subject to the use of the defendant in carrying on his farming operations as hereinbefore indicated. See Cassens v. Wisner, *supra.*

The roadway in question was used openly, continuously, and actually by the defendant William Hill and by tenants prior to his tenancy for far more than the statutory period of time with the complete knowledge and acquiescence of the plaintiff, her husband, and her sons, without protest. In addition, it was used by others than the tenants of Section 24.

Other assignments of error are without merit and need not be discussed.

From an analysis of the evidence and the authorities herein cited, we conclude that the judgment of the trial court should be, and is hereby, affirmed.

AFFIRMED.