EVERETT SATTERFIELD, APPELLANT, V. JOHN F. DUNNE ET AL., APPELLEES.

142 N. W. 2d 345

Filed May 6, 1966. No. 36193.

Robert V. Hoagland and Vogeltanz & Kubitschek, for appellant.

Julius D. Cronin, for appellees.

Heard before CARTER, SPENCER, BOSLAUGH, BROWER, SMITH, and McCowN, JJ., and RONIN, District Judge.

RONIN, District Judge.

This is an action in equity brought by the appellant as plaintiff against the appellees as defendants to establish a public road by prescription to an easement across the defendants' land and to enjoin defendants from interfering with his right to use said road. Upon completion of trial at the request of the plaintiff the trial judge visited the premises by traveling the entire length of the alleged road. The district court found for the defendants and dismissed the petition. The plaintiff's motion for new trial was overruled and the plaintiff appealed.

This being an appeal in an action in equity, this court will try the issues of fact complained of de novo, and reach an independent conclusion as to what findings are required. § 25-1925, R. R. S. 1943; Toelle v. Preuss, 172 Neb. 239, 109 N. W. 2d 293. Plaintiff states in his brief that the only substantial question involved in his appeal

is whether or not a public road by prescription has been established across defendants' property by the evidence in this case.

A review of the evidence is necessary to determine if the plaintiff has sustained his required burden of proof in this action. Plaintiff introduced into evidence as exhibit 1 an engineer's map of Loup County, Nebraska, dated January 1, 1949. This exhibit identifies the portion of defendants' lands involved herein as being generally in the northwest corner of Loup County and including an alleged road running across Sections 2, 3, and 11 and immediately south of the Calamus River which flows in a general southeasterly direction and through these sections. Plaintiff is an adjoining landowner to the south and east of defendants' lands and both parties are engaged in the cattle ranch business. Exhibit 1 depicts the location of state highways, county roads, and trail roads, but the disputed road was not located thereon, and was drawn by plaintiff in red on the exhibit.

Plaintiff testified that he has used this road across defendants' land since 1920 for hunting, fishing, and ranching purposes until stopped by defendants on April 29, 1965; that there were gates on this road wherever the fences crossed the road; and that this road course has been the same all through the years since 1920 to the present time. Plaintiff stated that the south Calamus River road was approximately 20 miles long, beginning with its junction with State Highway No. 183, proceeding in a northwesterly direction, and ending with the county line between Loup and Rock Counties.

Four witnesses for the plaintiff testified as to the alleged road and travel thereon. Art Roggasch lived in the south part of the county and testified that he first drove over this route in the 1920's when he was duck hunting. He was married to one of the Dunne girls and that he saw people using the road years ago but did not know their names. Ray Birch testified that he carried mail to the Ovitt store in the 20's but did not travel on

this disputed road or trail more than once or twice and did not testify there was a road over the land in question or that he saw anyone traveling on it. Jack Kraus, an employee of plaintiff, testified he had never been over the Dunne land until the last 2 or 3 years after the county closed the road on the Buell property. Robert Howard, another employee of plaintiff, testified as to meeting cars driven by fishermen but could not state that he saw any other use of the road.

Roy A. Copp testified for plaintiff by deposition that while he lived at Taylor, he had traveled on a publicly used trail on the south side of the Calamus River up to and beyond the Dunne property during the period of 1911 to 1946. He went up there to hunt and always went to the Dunne house and asked permission. He did not know where all the Dunne property was, but that he saw rural users of this road during this period of time. The deposition of Alice Dieleman states that she had traveled over this road from about 1932 to 1945 and that it was well defined; and that she had attended neighborhood dances which necessitated travel over the disputed road at times.

Plaintiff alleges in his petition that a portion of the alleged road "has been graded and maintained by Loup County." The record does not support this contention. The only evidence on this point is one isolated instance in October 1964, when a grader operator made one trip over the trail from the county road line south to Dunne's buildings to smooth the trail at the request of a contractor hauling gravel donated by Dunne from his place to be used on the said county road. Both the contractor and the blade operator involved therein testified for the defendants and stated that this one instance of blading was without the knowledge of defendants.

The testimony of the defendants and their witnesses is in direct conflict with those of the plaintiff as to whether any road or trail ever existed across defendants' land that was used by the public. Defendants' witnesses tes-

tified that for many years there has been a river road running in a general northwesterly direction on the south side of the Calamus River beginning at a point just north of Taylor and connecting the Harropp and Ovitt post offices, and proceeding about a mile west of the Ovitt post office located in Section 22, but instead of continuing further toward defendants' property, this road turned due north and crossed the river over the Fox Bridge and continued north a few miles to the graded county line road dividing Loup and Rock Counties. Exhibits 1 and 12 confirm the existence of this road. The point where the road turns north to cross the Fox Bridge is approximately 3 miles east of the east boundary of defendants' property.

Exhibit 11 is an aerial photograph of defendants' land made by the Soil Conservation Service in 1954. No trail or road as claimed by plaintiff is visible on the exhibit, although trails from defendants' buildings to the section line road to the north thereof and dividing Loup and Rock Counties are plainly identifiable.

Defendants also introduced in evidence exihibt 12, which is a soil survey of Loup County prepared by the United States Department of Agriculture in 1934, which contains a Loup County soil map. This map shows types of soils, drainage, secondary roads, and trails. It is significant that this map fails to show any road or trail across the Dunne property as contended herein by plaintiff.

A neighboring rancher, Bernard T. Buell, testified that he lived 3½ miles northeast of Dunne's buildings; that he is 45 years of age, was born and raised there, has been familiar with the territory around the Dunne place all of his life, and was down there frequently; that there has never been a well-defined road used by the public through the Dunne place; and that he has never seen any travel on any trail roads south of the Calamus River on the Dunne property. L. A. Goochey testified that he moved into the Dunne neighborhood in 1907 and was

road overseer in the 1920's under three different commissioners; that no work was ever done by the county on roads or trails on the Dunne land; and that there was no trail traveled by the public across the Dunne land but there were trails going "most any direction to where people lived." Robert Schrup testified that he had been a county commissioner of Loup County for 6 years and rented land near the Dunne land for 8 years starting in 1954; that the mail carrier to the Ovitt store used the Fox Bridge and did not therefore cross Dunne's land; and that in 1947 when he went to Dunne's place to help eradicate prairie dogs that he saw a "no trespassing" sign, but no roads or trails or any traffic on his premises.

John F. Dunne, one of the defendants, testified that he is one of the commissioners of Loup County; that he is 49 years of age; that there is no traveled road as alleged by plaintiff; that the gate on the alleged road on the east line of their property had been there 6 or 7 years; that he does not know who placed it there; that there has never been "any road along the red line drawn by Mr. Satterfield on the map, Exhibit 1, through my land or my brother's"; that there have been "no trespassing" signs in numerous places along the Dunne property about as long as he can remember; and that "there has never been any auto gates on our property and what gates there are, are wire gates that you have to get out and open." The defendant, William E. Dunne, is 59 years of age and has lived all his life on the Dunne ranch through which the alleged road crosses. His testimony generally corroborates that of his brother, John F. Dunne, and is in direct conflict with plaintiff's testimony; and positively states that there never was a road, nor a trail road across his land as testified to by plaintiff.

The substantive law applicable to this case we find stated in State ex rel. Game, Forestation & Parks Commission v. Hull, 168 Neb. 805, 97 N. W. 2d 535, wherein this court said: "The use and enjoyment which will create title by prescription to an easement are substan-

tially the same in quality and characteristics as the adverse possession which will give title to real estate. The use and enjoyment must be adverse, under claim of right, continuous, notorious, exclusive, with the knowledge and acquiescence of the owner of the servient tenement, must continue for the full prescriptive period, and must be substantially identical.

"To establish a prescriptive right to an easement, all of the elements of a prescriptive use and enjoyment must be established by clear, convincing, and satisfactory evidence.

"If the owner of land encloses it with a fence and installs gates therein at the entrance and exit where the right-of-way is claimed across the tract, it is evidence that he recognize the right of those who use the road to continue to use it.

"It is not indispensable to the establishment of a highway by prescription that there has been no deviation in the line of travel. If the course of travel has remained substantially unchanged for the full period, it is sufficient even though at times, to avoid encroachments, obstructions, or the like upon the road, there have been slight changes in the line of travel."

Our court reaffirmed the law cited in the Hull case in the recent case of Pierce v. Rabe, 177 Neb. 745, 131 N. W. 2d 183. Applying the law to the sharp conflict in the facts in the instant case, it appears that plaintiff has not sustained his required burden of proof.

In determining whether an alleged road is a public one, the matter of whether or not any governmental authority has maintained or improved it with the knowledge of the owner is most important. In State ex rel. Game, Forestation & Parks Commission v. Hull, *supra*, it is indicated that Cherry County had improved and maintained the alleged road at Hull's request and claims were submitted by Hull for road work which strongly indicated that he acknowledged this to be a public road. In Pierce v. Rabe, *supra*, the record reflects that the

owner requested the county construct a bridge on a road leading to his land; that the bridge was constructed by the county on condition that the owner would convey enough land for a 40-foot road; and that the owner Rabe would give Pierce the accommodation road in question. In each of the above-cited cases the expenditure of public funds on road improvement or maintenance with the knowledge of the owner was held to remove the question either of the identity of the line of travel or the continuity of its use, and had the legal effect of an acknowledgment of a public interest being vested in the road. It is not, however, indispensable to the establishment of a road by prescription that there be an expenditure of public funds or work by the public authorities for its improvement or maintenance. It is where there has been an irreconcilable conflict on a material issue in such an action that such public expenditure or work with the knowledge of the owner may have the legal effect of the owner's acknowledgment of the right of the public to use such road. The facts do not warrant such a finding in this case.

The record discloses that at the request of the plaintiff the trial court, accompanied by the attorneys for both parties, traveled by automobile the entire distance of the alleged road across the defendants' property and even proceeded for several miles to the southeast beyond the road in controversy. Plaintiff contends that the trial court should have viewed the entire south river road from its alleged beginning on the west to its junction with State Highway No. 183 on the east. We reject this contention of plaintiff for the reason that the proposed additional travel for the trial court would obviously be immaterial to the issues of this action.

When an action in equity is appealed, it is the duty of this court to try the issues de novo and to reach an independent conclusion without reference to the findings of the district court. Where in such a case the trial court has made a personal examination of the physical facts,

and where, in the same case, the oral evidence in respect of material issues is so conflicting that it cannot be reconciled, this court will consider the fact that such examination was made and that such court observed the witnesses and their manner of testifying, and must have accepted one version of the facts rather than the opposite. City of Wilber v. Bednar, 123 Neb. 324, 242 N. W. 644; Lackaff v. Bogue, 158 Neb. 174, 62 N. W. 2d 889. We will consider the findings of the trial court in arriving at a decision in this case on appeal, and we hold that the evidence is sufficient to sustain the judgment.

For the reasons above set forth, the judgment of the trial court is affirmed.

AFFIRMED.