LEO W. CONNOT, APPELLEE, v. CHARLES BOWDEN, APPELLANT.
200 N. W. 2d 126

Filed August 8, 1972. No. 38295.

Michael V. Smith, for appellant.

W. Gerald O'Kief, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, SMITH, McCOWN, NEWTON, and CLINTON JJ.

NEWTON, J.

This action was brought to establish a roadway ease-

ment across defendant's land and enjoin him from interfering in its use. The district court held a public road had been established and granted an injunction against defendant. We reverse the judgment of the district court.

Plaintiff's father is the owner of the south half of Sections 8, 9, and 10, Township 34 North, Range 26 West of the 6th P.M., in Cherry County, Nebraska, and other lands running south to the Niobrara River. Defendant is the owner of the north half of Sections 9 and 10 and the northeast quarter of Section 8. Paved Highway No. 12, completed in 1962, runs along the north edge of these sections. The disputed right-of-way runs along the east fence line of the northeast quarter of Section 8. Both the Connot and Bowden buildings are 2 miles east bordering a north-south road running between Sections 10 and 11. The respective holdings of the parties are fully fenced. There is a wire gate in the northeast corner of Section 8 and there formerly was a similar gate in the southeast corner of the northeast quarter in a fence maintained by Connot.

Plaintiff's evidence is to the effect that, prior to 1914, Section 8 was a military reservation, unfenced, open to public grazing, and crossed at will by the public, including persons living on the river bottom to the south. The land in the area was then homesteaded and fenced. Thereafter for a period of about 6 years, in the 1930's, persons living on the river sometimes entered Section 8 at the gate in the northeast corner, drove south through the Connot gate in the southeast corner, and on south across Connot land to the river. A trapper and one or two persons cutting wood on the river bottom did likewise on occasion. The length of this usage is not reflected by the record. Plaintiff claims he used the trail across defendant's land 50 to 150 times each year since 1960 and that there had for many years been a well-defined trail. Plaintiff knew of only 2 neighbors who had used the trail and that was about 30 years ago.

A man by the name of Hayes formerly owned and lived on the northeast quarter of Section 8. He had padlocked one of the gates for a considerable period of time commencing about 1940. Plaintiff's father had padlocked the gate in the southeast corner of the northeast quarter of Section 8 about 30 years ago, then removed the gate and fenced across the alleged road. An individual who lived south along the river for a short time was given a key and plaintiff says he now drives through by removing a post and letting down the fence.

Plaintiff and his father concede they often crossed from the east through their own land to reach their land 2 miles to the west and had a well-defined trail used for this purpose but insist they made use of the road, now Highway No. 12, and the trail across defendant's land. A disinterested neighbor, a Valentine high school teacher for 10 years, gave volunteer work as a neighbor to the Connots in 1967 and says in every instance he drove through the Connot land to get to the Connot westerly holdings. He was not aware that Connot ever used a trail through defendant's land. Plaintiff says the route through the Connot land is now impassable due to a washout or deepening of a creek.

Plaintiff introduced aerial photos taken in 1955. These photos fail to show any north-south road across the Connot land but do show an east-west trail. The only trail appearing on defendant's land in the northeast quarter of Section 8 is one running to the Hayes building site where it ends and does not run farther south. Pictures taken by defendant after issuance of a restraining order and recent use of the alleged trail by plaintiff do not reflect a well-defined trail, but only a mashing down of the foot-high grass. Usage of this route by plaintiff for 50 to 150 times per year over a 10-year period, as he testified, would necessarily have resulted in destruction of the grass and a well-defined roadway. Plaintiff concedes that until 1971 practically all his machinery was moved west across the Connot

land; and that prior to construction of Highway No. 12, that roadway was a very poor one. Defendant verifies this and indicates it was subject to sand blowouts.

Plaintiff further says that on occasion a coyote hunter, a trapper, and on occasion a gardener on the river bottom had entered or left across plaintiff's and defendant's lands from the road, now Highway No. 12. Defendant states that to his knowledge plaintiff had only used the alleged trail on one occasion, in 1961, when his truckers hauled hay out after asking defendant's permission.

The district court, understandably, failed to find an easement by prescription had been established but did find a public road had been established by user. This finding is of necessity based upon the more or less sporadic travel across plaintiff's and defendant's lands and is directly contradictory of the actions of the owners, specifically including the Connots. For many years plaintiff's father either padlocked his gate or fenced solidly across the road plaintiff now seeks to establish. The same was done by the former owner of defendant's land, Hayes. Obviously none of the owners recognized the establishment of a public road or the right of others to freely enter and leave. They interrupted, at will, the sporadic entry by others, and Connot, after exerting such rights of ownership, granted permission to the last resident to the south to cross his land by giving him a key. Such interruptions of public use are assertions of ownership rights, stop the running of the statute, and definitely indicate a permissive use only.

It is apparent that the land was formerly public owned, was open grazing land, was traversed at will by anyone desiring to do so, and that such use was permissive. In the year 1914 it was thrown open to homesteading, was subsequently homesteaded, and eventually fenced. The permissive crossing of the land appears to have continued. There was no road through the area. The situation appears to be similar to that

described in Burk v. Diers, 102 Neb. 721, 169 N. W. 263, wherein it is stated: "The road in controversy, if it was a road, which is disputed, was a neighborhood road. Oftentimes farmers or owners of city lots, out of mere generosity and neighborly feeling, permit a way over their land to be used, when the entire community knows that the use is permissive only, without thought of dedication or adverse user. This use ought not to deprive the owner of his property, however long continued. Such rule would be a prohibition of all neighborhood accommodations in the way of travel. * * *

"The use necessary to estop the owner from claiming his land must be such that interruption would affect private rights or public convenience. Where the public has exercised no control or dominion over the road, nor used it to such an extent as to inform the owner, exercising reasonable care for his rights, that the public is using it under claim of right, then neither implied dedication nor adverse user is shown. There is no evidence in this case that the general public has depended upon the existence of this road and will be seriously inconvenienced by the loss of it; nor have private persons made improvements in the belief that this is a road. In fact, the road is a cul-de-sac."

In the vast holdings of grazing lands in western Nebraska, many well-defined trails may be found which are accessible to all through gates provided. Entry by nonowners of the land for various purposes cannot ordinarily be deemed to be adverse. It is not under a claim of right but generally recognized as permissive in nature. In the present case, no "claim of right" was ever asserted until the incidents occurred which gave rise to this action. As stated in Stubblefield v. Osborn, 149 Neb. 566, 31 N. W. 2d 547: "In the instant case the evidence by the plaintiffs shows the original entry and use to have been permissive. The plaintiffs did not inform Bolton that they claimed a right-of-way and perpetual easement across his land. They crossed the land

on occasions to go hunting, as did others. There was no claim of right or exclusive use. The most that can be said as to their crossing the lands in question is that it was permissive only, a neighborly act on the part of the owners or tenants on the land. There was no claim of ownership on the part of plaintiffs of such a nature that they openly and forcibly asserted directly against the actual owners of the land in such a manner that the owners would be required to take affirmative action against the plaintiffs." It is well settled that a permissive use cannot ripen into a prescriptive right until 10 years after notice of the adverse claim is brought home to the landowner. See Walsh v. Walsh, 156 Neb. 867, 58 N. W. 2d 337. "A permissive use of the land of another, that is a use or license exercised in subordination to the other's claim and ownership, is not adverse and cannot give an easement by prescription no matter how long it may be continued. * * *

"To establish a prescriptive right to an easement, it must have been exercised under a claim of right. A use by express or implied permission or license cannot ripen into an easement by prescription." Scoville v. Fisher, 181 Neb. 496, 149 N. W. 2d 339.

Plaintiff did not contend that a public road had been established but claimed only an easement. The record does not disclose that the public ever claimed dominion over the alleged right-of-way or exercised dominion over it. It was never worked or maintained by the public. With the establishment of the Connot fence it became a deadend or cul-de-sac. The evidence discloses that if a road ever existed it ran all the way through the lands of both parties to the Niobrara River. The actions of the Connots clearly negate their claims that either an easement or a public road was established by prescription. Their padlocking of the gate and closing of the fence definitely import a permissive use only. Both landowners have asserted dominion over the purported easement way. When their lands were fenced they

could no longer be crossed at any or all points. Entry could only be gained through the gate which defendant's predecessor in title provided as a means of entry to his improvements and home and thence south through the Connot gate.

It is conceded that Connots had access to their lands through their own property and commonly used this means of access until the recent construction of Highway No. 12 when they found it more convenient to cross defendant's land. The photographs fail to support their contention that a well-traveled easement or roadway existed. On the contrary, they verify defendant's contention that Connot used the way through his own land almost exclusively and that the lane on defendant's land ran only to the site of the old improvements and not straight south through the Connot fence. " '* * * To prove a prescriptive right to an easement all of the elements to a prescriptive use must be generally established by clear, convincing, and satisfactory evidence.' " Kuhlmann v. Platte Valley Irr. Dist., 166 Neb. 493, 89 N. W. 2d 768. See, also, Jurgensen v. Ainscow, 155 Neb. 701, 53 N. W. 2d 196. The proof here is not sufficient to meet this requirement.

The language used in Gilliland v. County of Frontier, 148 Neb. 636, 28 N. W. 2d 448, is appropriate: "To establish a highway by prescription there must be a user by the general public under a claim of right, and which is adverse to the occupancy of the owner of the land, of some particular or defined way or track, uninterruptedly, without substantial change, for a period of time necessary to bar an action to recover the land." That case further stated: "The plaintiff owner acquired the land in 1916 and 1917. He fenced it in 1918 and there were gates at C and at E. Thereafter these gates were kept closed, in particular during the several months of each year when stock was kept there. The relatively few people who found occasion to use the road did so, opening and closing the gates. It was a community,

neighborly arrangement such as existed in many sections of Nebraska. From 1918 to 1945, no one protested or questioned plaintiffs' right to enclose the road and to maintain the gates."

The existing circumstances demonstrate that neither a prescriptive easement or public road has been established. The judgment of the district court is reversed and the cause remanded with directions to dismiss.

REVERSED AND REMANDED WITH
DIRECTIONS TO DISMISS.

SPENCER, J., dissenting.

I respectfully dissent from the majority opinion herein. The main issue presented by the appeal is the sufficiency of the evidence, under the applicable law, to sustain the judgment of the trial court.

Plaintiff's father testified that he purchased the south half of Section 9 in 1938, and has owned it since that time. He has been familiar with the road in question since 1934, and has always considered it a public or open road. He used it as such whenever he had occasion to do so. On occasions, the county tractor had on request dragged it in the winter. His testimony placed the road between Sections 8 and 9, going north to Highway No. 12. In addition to his own use, he gave the names of others who had used the road since the early 1930's.

Plaintiff testified to his use of the road for 50 to 150 trips annually. He gave the names of several others who have used the road since 1934. There was a gate at the highway. This action resulted when the defendant padlocked the gate after a dispute with the plaintiff and the plaintiff cut the padlock.

Martin G. Grooms testified that he was familiar with the road because he had traveled it years ago. His use of the road covered the period from 1932 into the 1950's. He knows from observation the road was used by the public for that period. He has not been in the area since the 1950's. In 1932, through 1934, he cut wood

in the canyon below this property and built a cabin there. The road at that time was well-traveled and was the only way in and out. He had never asked permission of anyone to use it, and knows of his own knowledge that it was used by the public for more than 10 years continuously as a public road. In 1933, he built a road below this one through the canyon south of Sections 8 and 9. This road then was open all the way from present Highway No. 12 to the river.

The testimony of defendant at one place on direct examination appears to corroborate plaintiff's evidence. It is as follows: "Q  All right.  Now, was there, at that time, when you acquired this, a road going straight south from the northeast corner of Section Eight down clear across the section, or down towards the north half of the section?  A Yeh.  Q  There was a road there? A  Yes."  Defendant's testimony otherwise would seem to indicate that Highway No. 12 was an old concrete trail, rough and hilly, previous to 1961; that it had very little use; and, while there were a few trails across his land, there was no road.  It was his testimony the Connots had a road across the south half of Sections 9 and 10 which they used.  Except for a few occasions when he saw the plaintiff hauling hay on the area in question, he did not see the Connots using the alleged road.  None of the Connots asked his permission to use the road, and he doesn't know of anyone who was prohibited from using it in the 1930's.

Defendant's brother-in-law testified there was a road but he could not give the date nor the exact location. He placed it across this area to the highway.  His testimony was to the effect this road was extensively used back in the early years.

Fred R. Grooms testified he traveled the road as early as 1914.  He placed the road along the section line on the west side.  The road went clear down into the canyon, and it was used by folks in the canyon going north.  Most of them came out over this road.

There are two aerial photographs of the area in evidence, one taken in 1939, the other taken October 17, 1955. Both indicate the presence of a road between Sections 8 and 9, as well as a trail on Section 8. Exhibit 4 is a general highway and transportation map of Cherry County as of January 1, 1937. It clearly shows a road between the section lines at the exact spot where the trial court found a public road to exist.

The plaintiff has shown open, visible, continuous, and unmolested use of the road for a period of time sufficient to acquire an easement by adverse user. In such instance, the use would be presumed to be under a claim of right. See Hopkins v. Hill (1955), 160 Neb. 29, 68 N. W. 2d 678. In that case we said: "If the use of an easement has been open, adverse, notorious, peaceable, and uninterrupted, the owner of the servient tenement is charged with knowledge of such use, and acquiescence in it is implied." Plaintiff's use and that of his father started before defendant acquired the north half of Sections 8 and 9.

In Pierce v. Rabe (1964), 177 Neb. 745, 131 N. W. 2d 183, we said: "The use and enjoyment which will create title by prescription to an easement are substantially the same in quality and characteristics as the adverse possession which will give title to real estate. The use and enjoyment must be adverse, under claim of right, continuous, notorious, exclusive, with the knowledge and acquiescence of the owner of the servient tenement, must continue for the full prescriptive period, and must be substantially identical."

In Pierce v. Rabe, *supra*, we further said: "If the owner of land encloses it with a fence and installs gates therein at the entrance and exit where the right-of-way is claimed across the tract, it is evidence that he recognizes the right of those who use the road to continue to use it."

Passing for the moment the finding of a public road,

the evidence herein is ample to establish a prescriptive right to an easement.

While plaintiff's action was for an easement, the trial court found a public road to exist, and that the plaintiff had the right to use the same without interference by the defendant. From exhibit 4, there can be little question a public road did exist at the point involved on January 1, 1937. This was before defendant acquired his property. While the county has not maintained the road, plaintiff's evidence would indicate it has been used since that time by the plaintiff, his family, and other members of the general public.

To establish a highway by prescription, it must be shown there was use by the general public under a claim of right, adverse to the owner of the land on some particular or defined line of travel, uninterruptedly without substantial change for a period of time necessary to bar an action to recover the land. However, in this respect, it is not indispensable to the establishment of a highway by prescription that there has been no deviation in the line of travel. If the course of travel has remained substantially unchanged for the full period, it is sufficient, even though at times to avoid encroachments, obstructions, or the like upon the road there have been slight changes in the line of travel. See State ex rel. Game, Forestation & Parks Commission v. Hull (1959), 168 Neb. 805, 97 N. W. 2d 535.

The evidence was sufficient to show the establishment of a road previous to the time the defendant acquired his property. In the Hull case, *supra,* we held that the change in the course of a road after the right of the public is established by use for the statutory period does not defeat the public right to the use of the road as previously established.

While the evidence is not as clear as I would like to have it as to the exact location of the road in question, I feel it is sufficient to sustain the finding of the trial court. The Cherry County highway transportation map

definitely indicates the road was well established at least by January 1, 1937.

I have determined the evidence was sufficient to permit the trial court to find that a public road existed along the section line dividing the northeast quarter of Section 8 and the northwest quarter of Section 9. The evidence is fairly conclusive that there had been a road in the area which was used as a thoroughfare by the public for many years previous to the acquisition of the property of the parties herein.

The trial court inspected the area in question. He had an opportunity to personally observe the manner and conduct of the witnesses in testifying; and the exhibits in evidence tend to support his finding.

The following rule enunciated in Satterfield v. Dunne (1966), 180 Neb. 274, 142 N. W. 2d 345, is particularly pertinent herein: "When an action in equity is appealed, it is the duty of this court to try the issues de novo and to reach an independent conclusion without reference to the findings of the district court. Where in such a case the trial court has made a personal examination of the physical facts, and where, in the same case, the oral evidence in respect of material issues is so conflicting that it cannot be reconciled, this court will consider the fact that such examination was made and that such court observed the witnesses and their manner of testifying, and must have accepted one version of the facts rather than the opposite."

From the above, it is apparent to me that the judgment entered by the district court is correct and should be affirmed.

SMITH, J., concurs with the dissenting opinion by Spencer, J.